# In Re LOHMEYER

[No. 1 (Misc.), September Term, 1958.]

*Decided January 21, 1959.*

The cause was argued before Brune, C. J., and Hender-son, Hammond, Prescott and Horney, JJ.

*Albert A. Levin* for the appellant.

*Parsons Newman* for the Board (appellee).

HORNEY, J., delivered the opinion of the Court.

Robert H. Lohmeyer (the petitioner), a member of the Bar of Virginia, applied to the State Board of Law Examiners (the Board) for admission to the Bar of Maryland, pursuant to Code (1957) Art. 10 § 7 and the Fourteenth Rule of this Court governing admission without examination. The application, after the usual investigation and a hearing, was rejected by the Board and the petitioner, as was his right, appealed to this Court.

Section 7, *supra,* provides that:

> "Members of the bar of any state, district or territory of the United States, who, for five years after admission, have been engaged as practitioners * * * shall be admitted without examination on proof of good moral character * * * after becoming actual residents of this State."

This Court, in pursuance of the statute, adopted Rule 14, which, among other things, provides that the petitioner must have been "actively and continuously engaged as a practitioner or teacher of the law, or judge" in one of the States, Territories or the District of Columbia for at least five years before the filing of the petition. See *Edmonds v. Webb,* 182 Md. 60, 32 A. 2d 702 (1943).

The Board found that the petitioner had not been actively and continuously engaged in the practice of law in the State of Virginia for a period of five years, and we shall confine this opinion to that question.

The application for admission shows that the petitioner was born in Baltimore, and, after attending Gilman Country School, went to Blair Academy in New Jersey. He also attended Cornell University for two years, and then worked in the family haberdashery shop in Baltimore from 1936 to 1945. He then entered the Georgetown University Foreign Service School where he received some legal training and was graduated with a B. S. degree in 1947. Thereafter he moved to Richmond and received the remainder of his legal education by a correspondence course with LaSalle Law

School and by law office study. He also took a "refresher course" at Washington and Lee University. During this period—from 1948 to 1951—he spent the whole time studying except during 1951 when he worked as a clerk in a pharmacy in Richmond.

The petitioner was admitted to the Virginia State Bar on August 7, 1952. He opened a law office in Richmond, associating himself with William A. Hall, Jr. In November of 1956 he came to Baltimore because of a nervous breakdown and marital difficulties, and to seek financial assistance from his family. During November and December of 1956 he worked in the haberdashery shop. On January 14, 1957, he returned to Richmond to resume his practice and learned that his wife had filed suit against him for a limited divorce. He immediately went back to Baltimore and entered Spring Grove State Hospital where he remained until September 26, 1957. While in the hospital he received notice that his wife had obtained a divorce *a mensa et thoro*. After his discharge from Spring Grove he again worked in the haberdashery shop to earn money to send his family in Richmond.

In January of 1958 he again returned to Richmond to resume practice of the law and also to try to effect a reconciliation with his wife. When he found that rapport with his wife was hopeless he returned to Baltimore on January 20, 1958. He filed his petition for admission to the Maryland State Bar in March of 1958.

In this case we have an attorney-at-law who was admitted to the bar of another state in August of 1952, and practiced law there until November of 1956. From November of 1956 to September of 1957 he clerked in a store for two months and was hospitalized for about eight months. It was during this hiatus that the five year period after his admission to the Bar of Virginia expired on August 7, 1957. When he was released from the hospital, instead of resuming the practice of law, he returned to his job as a clerk in the store until January of 1958. Nor did he practice law between January of 1958 and March of 1958 when he filed his petition for admission to the Bar of this State. In fact, he did not *actively* practice law after November of 1956. And at that time he

had been actively so engaged for only a period of four years and three months. Under these circumstances we think it is clear that the petitioner was not "actively and continuously engaged" in the practice of law for a period of five years in the State of Virginia.

Generally, in keeping with the tenor of reciprocity provisions for the admission of out-of-state attorneys without examination, it has been held that the requirements as to time and activity, although involving only one question, has two aspects. There is the inquiry whether the applicant has practiced the necessary length of time in another jurisdiction, and, there is the further inquiry whether he has complied with the spirit of the condition that he shall have practiced "actively and continuously" during the required period. There have been two prior cases on the question in Maryland. In *Edmonds v. Webb, supra,* we held that the rule was a reasonable one and that the petitioner therein had not practiced law in *one* state for the required period of time. And in *Appeal of Wilbur Rogers,* 192 Md. 737, 83 A. 2d 517 (1946), we ruled that a retired army officer, who had only a desultory practice, had only office space for a part of the five year period, and only a mailing address for a part of the same period, and who, for the most part, was engaged as an insurance solicitor, did not meet the statutory and regulatory requirements. One of the principal reasons why we have required members of the bar from other states to have practiced actively and continuously in *one* state for the requisite period is set forth in the *Edmonds* case. Therein, quoting a part of the letter to the Board of Law Examiners from the late Chief Judge Bond, dated December 5, 1941, which had the approval of this Court, we stated that another "purpose of the requirement is to have the applicant put to the test of the reputation which he would acquire in five years in one locality."

The petitioner cites two cases from other jurisdictions, each of which construed the word "continuously." In *In re Deans,* 208 F. 1018 (W. D., Ark., 1913), [aff'd in *United States v. Deans,* 230 F. 957 (C. C. A., 8th, 1916)], the Court, in construing a statute regulating the right of an alien to qualify for citizenship, which provided that applicants must

have resided *continuously* in the United States for more than five years, ruled that the alien was still eligible even though he had on two occasions during the five year period, for two and four months, respectively, made visits away from the United States. In *United States v. St. Louis S. W. Ry. Co. of Texas,* 189 F. 954 (W. D., Tex., 1911), it was held that a telegraph office, closed during four hours in each twenty-four hour period was, nevertheless, an office kept open *continuously* day and night within the meaning of a statute prohibiting a telegraph operator working longer than nine hours out of twenty-four. Neither of these cases is in point as we see it. Here, we are not as much concerned with the petitioner's actual presence in the State of Virginia during the whole of the five year period as we are with the reputation he would have acquired in five years as a practicing attorney in that State had he remained there and *actively* practiced law therein during the required period. The word "actively" as it is used in the rule denotes the opposite of "passively" or "inactively" and means active participation in the practice of law. We think it is clear from the record in this case that the petitioner did not actively participate in the practice of his profession during the last nine months of the required five year period.

The decisions of the courts in other states, having reciprocity provisions for the admission without examination of attorneys-at-law who have practiced in another jurisdiction, have construed the requirement, as have we, according to the spirit of the statute or rule. But, since the decisions of the court of a particular state deal with questions which arose under the statutory or regulatory requirements of that particular state, the interpretations of such statute or rule are usually narrow and afford little of general interest.[1] The most helpful case we have found, bearing on the inquiry whether the petitioner had practiced the required length of

---

1. See the cases collected in an annotation in 51 A. L. R. 2d 1198 (1957) entitled "Construction and effect of reciprocity provisions for admission to bar of attorney admitted to practice in another jurisdiction."

time, is *In re Rotolo,* 247 App. Div. 724, 285 N. Y. S. 274 (1936), where the petitioner was a resident of New York for the last three months of the five year period in which he claimed he was practicing law in New Jersey. The Court rejected his application stating that, while the rules did not require a petitioner to be a resident of only one state during the entire five years of active practice outside of New York, it was of the opinion that the spirit of the rules required the rejection of his application since during part of the period he was actually a resident of New York. At p. 274, the Court said:

> "To permit [this] * * * would open the door to an evasion of the plain purpose to raise the standards of admission, and at the same time give an advantage over those who are required to conform strictly to the rules of the Court of Appeals as to their scholastic rating and legal training and who must also undergo a severe test under the direction of the Board of Law Examiners. While in this case the residence in this state was for a short period during the practice in New Jersey, the court feels that, in view of the large number of applicants for admission upon examination, there must be a strict construction of the rules of admission on motion."

See also *Application of Harvey,* 309 N. Y. 46, 127 N. E. 2d 801 (1955); *In re Pape,* 253 App. Div. 725, 300 N. Y. S. 631 (1938); *State v. Washington State Bar Ass'n,* 26 Wash. 2d 914, 176 P. 2d 301 (1947).

We agree with the petitioner that the meaning of the adverb "continuously" as used in Rule 14 should be so construed as to be consistent with the objects and purposes of the rule. But, in so doing, as previously indicated, we cannot overlook the fact that one of the principal objects of the rule, as stated in *Edmonds v. Webb, supra,* was "to have the applicant put to the test of the reputation which he would acquire in five years in one locality." It is true that he failed to meet the full measure of that test by only nine months, but he *did* fail. If we assume that the petitioner's absence

from the State of Virginia was caused by circumstances beyond his control, he never returned to practice law in that State to fill out the five year period after the reason for his absence no longer existed, even if that would have cured his lack of continuing practice, which we do not decide.

The petitioner did not meet the requirements of Rule 14 and we must affirm the refusal of the Board to certify him as eligible for admission pursuant to Art. 10, § 7, *supra*. This does not, of course, bar him from meeting, if he can under the law, the requirements for admission to the bar that have been set up for other residents of this State.

*The action of the Board of Law Examiners is affirmed, the appellant to pay the costs.*