KARL W. MARQUARDT, R.PH., J.D., Executive Secretary PharmacyExamining Board Department of Regulation And Licensing
You state that the Pharmacy Examining Board (Board) has contracted with the National Association of Boards of Pharmacy (NABP) for the purpose of using an examination prepared by NABP and a national testing service in testing applicants for licensure before the Board. You also state that the scoring answer key is not available to the Board, precluding the Board from conducting post-examination reviews with licensure applicants, as was the practice prior to using the national examination. The scoring answer key is not available to the Board for reasons of maintaining examination security and confidentiality of its contents. YOU ask for a legal opinion regarding the right of the Board and professional testing service to maintain confidentiality of the examination's content versus the right of an applicant to review his examination.
Your question presumes that the Pharmacy Board has not unlawfully delegated its authority to examine licensure applicants by use of a national examination as the testing instrument. Although I conclude that the Board may use a national examination, the importance of the issue requires discussion.
The statutory provisions governing the Board are broad enough so as to allow the Board to adopt a national examination for its testing *Page 49 
instrument. This is so despite the fact that other examining boards, such as the Optometry Examining Board, see sec. 449.04, Stats., are specifically authorized by statute to use examinations prepared by national boards. Section 15.40 (2)(C), Stats., provides that examining boards shall:
 Be the supervising authority . . . of all personnel . . . engaged in the review, investigation or handling of information regarding . . . examination questions and answers . . . .
Use of a national examination is permissible so long as the Board exercises this supervisory function. Section 15.40 (2)(C), Stats., cannot reasonably be read to require that the Board's personnel be the only people involved in constructing or grading the examination.
The Pharmacy Examining Board, however, must exercise final authority over who shall be deemed to have passed the examination. Section 450.02 (3), Stats., as amended by ch 29, sec. 1544, Laws of 1977, states in part as follows:
 Applicants filing proofs, satisfactory to the examining board, of qualifications and training as outlined in sub. (2) shall, after having passed the examination by the examining board and upon payment of the fee, be granted certificates as registered pharmacists.
The phrase, "after having passed the examination by the examining board," does not require the Board to construct or grade the examination. The legal definition of the word "by" includes "through the means, act, agency or instrumentality of."Black's Law Dictionary 251 (rev. 4th ed. 1968); 5a Words andPhrases 796. See also Webster's Third International Dictionary
306 (1961). Therefore, the examination contracted for by the Board is its examination within the statutory terms. My opinion to Senator Berger, dated September 7, 1976, a copy of which is enclosed, concluded that the Examining Board of Architects, Professional Engineers, Designers and Land Surveyors could utilize the examination of the National Council of Architectural Registration Boards as its testing instrument in order to secure the advantages of reciprocal licensure. That opinion stated at p. 3:
 [T]he Wisconsin Board may draw on any legitimate sources it chooses in developing a proper examination. It may go so far as *Page 50 
to adopt in total an examination developed by a private organization, so long as the subject matter of the examination fulfills the Wisconsin statutory requirements.
Unquestionably, the Board cannot delegate its authority to make the final decision as to who is suitable for licensure as a pharmacist. The Legislature has reposed that power in the Board and has not granted it power to subdelegate this ultimate responsibility.
Although the Board must make the final decision and cannot be a rubber stamp of a national examining board, nevertheless it is free to use such agencies to perform the mechanical acts of examining the applicants. See Aylward v. State Board ofChiropractic Examiners, 31 Cal. 2d 833, 192 P.2d 929, 934 (1948), and Fitzgerald v. Conway, 195 Misc. 397, 90 N.Y.S.2d 351 (1949)aff'd., 275 App. Div. 205, 88 N.Y.S.2d 649 (1949). In addition, the Board may use and consider the expertise of a national examining board as a properly qualified advisor. See Eagles v.United States, 329 U.S. 304, 313-316 (1946).
You indicate that the testing service has agreed to furnish evidence of the examination's validity and reliability and provide comparative scoring data. The Board must be satisfied that the examination fairly and adequately measures the pharmaceutical knowledge of applicants for licensure. Despite the advantages of reciprocal licensure and validation among a larger pool of applicants, making use of a national examination especially desirable, the Board nevertheless has a burden of showing that the examination furthers the statutory purposes. Evidence which tends to show the NABP and the national testing service are organizations of high professional standing, that the scoring process is accurate, that the pass/fail point selected is appropriate, and documentation that the examination in fact validly measures performance capability, are appropriate to sustain the reasonableness of the examination. I note that the contract allows the Board to retain a copy of the applicant's answers along with one copy of the examination if an appropriate rule is adopted. The Board is well advised to adopt such a rule, thus enabling it independently to assess the examination's validity by noting the subject matter covered and by comparing an applicant's answers with what the Board would determine to be reasonable answers and the score the applicant received from the NABP. *Page 51 
Accordingly, I conclude that the Board may utilize an outside examining agency both to perform the examination process and as an advisor as to the fitness of applicants for licensure but that that Board must exercise the final responsibility of deciding who should be licensed.
You ask if the Board and a national testing service may refuse to disclose the examination's content and presumably the correct answers to an applicant requesting an examination review.
The statutes do not require the Board to conduct post-examination reviews with applicants for licensure, and therefore, the applicant does not have a statutory right under ch. 450, Stats., to review his examination. In a challenge under ch. 227, Stats., the Board may be required to show that its refusal to license the applicant because such applicant failed the examination was not arbitrary and capricious. The Board must be able to show the examination was reasonable, utilizing the same types of evidence indicated above concerning the test's validity. Further, the Board would be well advised to be prepared to demonstrate that a particular applicant's answers justify the determination of a pass or fail. It is thus essential that the Board retain each applicant's answers, as recommended above, in order to make that determination.
If an applicant claims the right to review the examination on the grounds that it is a public record, different issues are raised. Section 19.21 (2), Stats., provides that any person shall have full access to all public records for purposes of examination and copying. The right of full access, however, is not unlimited. First, the right to inspect is subject to such reasonable regulations with respect to hours and procedures that the custodian may prescribe to limit unreasonable interference with the ordinary operations of his or her office. Moreover, the custodian may refuse inspection of certain records if he or she determines that the public interest in nondisclosure outweighs the public interest in having full public access to any public records. State ex rel. Youmans v. Owens, 28 Wis.2d 672, 681,137 N.W.2d 470 (1965), 139 N.W.2d 241 (1966).
In making the determination, the custodian must bear in mind that public policy favors the right of inspection of public records, and it is only in the unusual case that inspection should be denied. Beckon *Page 52 v. Emery, 36 Wis.2d 510, 516, 153 N.W.2d 501 (1967). If the custodian decides not to disclose the records, he or she must give as concrete an explanation as possible for nondisclosure to the person requesting inspection of the record. Beckon v. Emery,supra at 516. If the person seeking inspection is unsatisfied by such explanation, his remedy is in a mandamus action in circuit court. State ex rel. Youmans v. Owens, supra at 682. See 63 Op. Att'y Gen. 400 (1974), 60 Op. Att'y Gen. 284 (1971) and 60 Op. Att'y Gen. 470 (1971) for further discussion concerning disclosure of public records.
In the event an applicant requests a review of his or her examination, the Board may inform such applicant of the evidence demonstrating the validity of the test, the appropriateness of the pass/fail score and the reasonableness of the Board's reliance on the national exam as the testing instrument. The decision on whether to disclose the testing instrument should be made in accordance with the principles outlined above concerning public records, and it would be appropriate for the Board to consider that disclosure might destroy the future effectiveness of the examination process.
BCL:CDH