541 A.2d 977

**In the Matter of the Application of R.G.S. for Admission to the Bar of Maryland.**

**Misc. No. 2, Sept. Term, 1988.**

Court of Appeals of Maryland.

June 6, 1988.

Cole, J., dissented and filed opinion in which Murphy, C.J., and McAuliffe, J., joined.

Submitted before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

As a general rule, a person may not practice law in Maryland until he or she has been admitted to the Bar of this State. Md.Code (1987 Repl. Vol.) Art. 10, § 1. And as a general rule, admission to the Bar of this State is achieved either through successful passage of the regular bar examination (Art. 10, § 3, and Rule 7, Rules Governing Admission to the Bar [hereinafter Bar Admission Rules] ), or pursuant to Bar Admission Rule 14 (hereinafter Rule 14). *See also* Art. 10, § 7(a). This case concerns Rule 14. The rule

permits admission in Maryland upon successful completion of an abbreviated examination if the applicant, among other things, has been admitted, by examination, to the "Bar of another State, District or Territory of the United States" (Rule 14 a, m), and if he or she "for at least five of the seven years immediately preceding the filing of his [or her] petition [for admission in Maryland] ... has been regularly engaged in any of the following activities: as a practitioner of law; as a full-time teacher of law at a law school approved by the American Bar Association; or as a judge of a court of record." Rule 14 a (iii).

R.G.S. (the applicant) applied for admission under Rule 14. The State Board of Law Examiners recommended that he not be admitted. The matter is before us on the applicant's exceptions to the board's report. Rule 14 h.

There is no dispute about the applicant's legal career. In 1955, following graduation from the University of North Carolina School of Law, he was admitted to the North Carolina Bar by examination. For the next five years, he was assistant director of the Institute of Government and assistant professor of public law and government at the University of North Carolina. For the four years after that, he was an assistant professor at the University of Georgia School of Law. From 1964 to 1969 he was in private practice in North Carolina. In the latter year he came to Maryland as a full-time professor of law at a law school in Baltimore, and he served in that capacity (with significant legal "extracurricular" activities) until June of 1983. In that month he became a part-time adjunct law professor at the law school and also "of counsel" on a full-time basis to an Annapolis law firm. Those arrangements apparently still continue; in any event, they were operative on 22 December 1986, when the applicant filed his application for admission under Rule 14. This summary biography, augmented by material in the board's files, thoroughly justifies the board's conclusion that "[s]ince [1955, the applicant] has devoted his professional life to the law."

What, then, is the problem? Rule 14 a (iii) and (iv) require five years of prescribed activity "within seven years immediately prior to the filing of ... [an applicant's] petition." If one of those activities is teaching law, it must be full-time. Rule 14 a (iii). The seven-year period carries us back to December 1979. From that month until June 1983, the applicant was teaching law full-time—a period of approximately three and a half years. But at the end of that period, his teaching became part-time and thus no longer creditable for Rule 14 purposes. The remainder of the essential five years would have to be based on the theory that the applicant's work at the Annapolis law firm, from June 1983 onwards, amounted to being "regularly engaged ... as a practitioner of the law."

The Board of Law Examiners thought that if "Rule 14 provided for admission by acclamation, clearly ... [the applicant] would have been admitted forthwith." Nevertheless, it concluded that his law firm work was not the practice of law for Rule 14 purposes. And it further concluded that if what he had done was in fact the practice of law, then it was unauthorized practice, and for that reason could not "be recognized by the Board for purposes of Rule 14." We shall consider these positions of the board in order.

## I.  *Practice of Law*

A requirement of practice of law for some specified period of time is common in rules dealing with bar admission without full examination. *See* Annotation, "Validity, Construction, and Effect of Reciprocity Provisions for Admission to Bar of Attorney Admitted to Practice in Another Jurisdiction," 14 A.L.R.4th 7, 13 (1982). Our earlier cases suggest that a reason for the practice requirement was to put the applicant to the test of the reputation he or she would acquire through the practice of law in a single jurisdiction. *In re Lohmeyer*, 218 Md. 575, 578, 147 A.2d 703, 705 (1959); *Edmonds v. Webb*, 182 Md. 60, 63, 32 A.2d 702, 703 (1943). But Rule 14 no longer requires five years of practice in a single jurisdiction or in the state of original

admission; that requirement was removed in 1980. 8 Md. Reg. 17 (January 9, 1981).

In any case, the principal policy underlying the rule arises from the notion that "it is not unreasonable to assume that lawyers who have been able to sustain themselves by practicing for a number of years in one or more jurisdictions, whether as general practitioners, specialists, house counsel or government employees, possess ... [the skills tested for on the bar examination] in reasonable degree." Adkins, "What Doth the Board Require of Thee?" 28 Md.L.Rev. 103, 112 (1968) (hereinafter "Bar Admissions"). *See also In re Application of Mark W.*, 303 Md. 1, 8–9, 491 A.2d 576, 579–580 (1985) (quoting out-of-state cases to the same effect). In other words, the "consideration ... should be whether the applicant has sufficient professional experience to give a reasonable assurance of at least that degree of basic legal ability and perceptiveness measurable by a bar examination." "Bar Admissions," *supra,* 28 Md.L.Rev. at 113. In that situation, a new "full" bar examination is dispensed with.

That policy is easy enough to state; it is not so simple to define what is the practice of law within the context of the policy. Indeed, in *Mark W., supra,* we eschewed any attempt to define the term:

We and the Board of Law Examiners must draw a line between what is and what is not "the practice of law" so as to qualify under the statute [Art. 10, § 7] and the rule. No broad rule can be laid down, as the cases illustrate. Rather, each application must be judged on its own facts.

303 Md. at 18, 491 A.2d at 585. Rule 14 d likewise propounds no precise definition:

For purposes of this Rule a practitioner of the law is defined as a member of the Bar of another State, District or Territory of the United States including Puerto Rico who throughout the period specified in the petition has regularly engaged in the practice of law within the United States and its territories ... as the principal means of earning his livelihood and whose entire professional expe-

rience and responsibilities have been sufficient to satisfy the Board that the petitioner should be admitted under this Rule. The Board may consider, among other things,

(i) the extent of the petitioner's experience in general practice;

(ii) if the petitioner is or has been a specialist, the extent of his experience and reputation for competence in such specialty;

(iii) if the petitioner is or has been an employee of a law firm, government or a corporation or other employer, the nature and extent of his professional duties and responsibilities, as such employee, the extent of his contact with and responsibility to clients or other beneficiaries of his professional skills, the extent of his professional contacts with practicing lawyers and judges and his professional reputation among them and

(iv) any professional articles or treatises of which the petitioner has been the author.

In the case before us, does the applicant's work with the Annapolis law firm qualify as the practice of law because it demonstrates a degree of professional proficiency sufficient to make a full bar examination redundant? We turn to the relevant facts, chiefly as revealed in the transcript of the applicant's hearing before the Board of Law Examiners.

In 1981, when the applicant was still a full-time professor of law, the Annapolis law firm where he now works consulted him about a particular case. Both parties enjoyed the relationship and in 1983, the applicant was "asked ... to join the firm as an employee serving the lawyers of the firm and in a full-time capacity...." As we have seen, the applicant accepted this invitation.

He was listed on the firm's letterhead as "of counsel." [1] He viewed himself as

---

**1.** Neither the propriety of this description of the applicant's position in the firm, nor the propriety of the firm's failure to disclose on its letterhead that he was not admitted in Maryland is before us. *But see*

counsel to the firm. In that concept I am the firm's attorney. I'm not able to do the firm's work outside of the firm. I can't take the firm's business to court, but I'm the firm's attorney in the sense that I counsel the firm on legal matters involving the firm and the firm's clients' business.

More specifically, the applicant said he would

sit with the lead attorney from the firm on the case and we would go through the facts of the case and I would participate in an analysis of the case. I would articulate what I thought were the proper legal approaches to it, what I thought were the most likely potential remedies for whatever the problem happened to be and frequently do a great deal of research to support with authority what I had suggested.

Additionally, the applicant drafted pleadings and supporting memoranda of law and briefs, all under the supervision of licensed Maryland lawyers, who signed the documents. And he supervised the research activities of associates and paralegals in the firm. But he did not directly advise the firm's clients, nor did he appear in court, save on a few occasions, when he was admitted *pro hac vice*, pursuant to Bar Admission Rule 20, to argue cases in the Court of Special Appeals.

The Board of Law Examiners conceded that the applicant was "a distinguished ... lawyer and ... law professor who has contributed to the law profession in this State [and who] performs superior legal work for his firm." But it concluded that this legal work was not "the practice of law." This conclusion it reached because it did not regard the work of a law clerk as the practice of law and because the applicant was not directly involved in responsibility to the firm's clients: "The Hallmark of the practicing lawyer is responsibility to clients regarding their affairs, whether as advisor,

Rules 7.1 and 7.5 of the Rules of Professional Conduct and former Disciplinary Rule 2–102 (C).

advocate, negotiator, as intermediary between clients, or as evaluator by examining a client's legal affairs."

There is certainly precedent for the notion that a research assistant in a law firm is not practicing law. For example by order dated 2 April 1973 we denied Rule 14 admission to Elmer M., pursuant to a board report recommending denial for that reason. On 26 November 1968 we denied admission to Charles Lee N. As to private practice, the board (in recommending denial) observed that Mr. N. spent some time in research and brief writing, but that this work "could have been performed by a law clerk or law student—not necessarily a member of the Bar." Board of Law Examiners report of 11 October 1968 at 11. *And see Petition of Nenno,* 472 A.2d 815, 819–820 (Del.1983) (for purposes of Delaware admissions rule, "a practice of law" means much more than merely working with legally-related matters).

But the applicant now before us obviously was not performing as a paralegal or a "mere" law clerk. True, he did research and wrote memoranda, functions that a paralegal, clerk or law student can do, within the limits imposed by training, skill, and experience. The applicant's work of that sort, however, was clearly on the highest level, and geared to the advice he furnished partners in the firm as to litigation strategy and the like. Surely if a partner in a law firm, admitted to the bar by examination (as the applicant was admitted in North Carolina), does his or her own research and brief writing, that partner is practicing law. It is not so much the nature of the function as the level at which it is performed that is decisive here.

With respect to the board's stress on the importance of attorney-client relationships, for that too, there is some precedent. We refer again to the case of Charles Lee N., who had done some legal writing that he claimed was the practice of law. The board (somewhat like the board in the case before us) thought that "legal writing" did not qualify, because " 'practice' in ... [Rule 14] is meant in its ordinary sense—that is, of one performing professional services for a specific client 'or other beneficiar(y)' in connection

with a specific legal problem...." Board of Law Examiners report of 11 October 1968 at 9.

We do not downplay the importance of the attorney-client relationship as one means of testing whether a person is engaged in the practice of law. *See* Rule 14 d (iii). And under some prior versions of Rule 14, that test might have been critical. *See* "Bar Admissions", *supra*, 28 Md.L.Rev. at 109–110, and Board of Law Examiners report of 9 October 1967, concerning the admission of Ruth E.D. (denied by order dated 21 November 1967) (discussing history and development of Rule 14). But in terms of the Charles N. report, the present applicant was performing legal services for a specific "beneficiary"—the law firm that employed him. And in this case, for purposes of Rule 14 we do not think that the existence of lawyer-client relationships is the *sine qua non* for the practice of law. Rule 14 does not say so. As we have stated earlier, the purpose of the rule is to require only enough "practice" (practical experience) to demonstrate no need to take a "full" bar examination. In demanding more than that, we think the board misconstrued Rule 14.

█ We hold that on the record before us, the applicant was practicing law, within the meaning of that rule, from June 1983 until the date he submitted his petition for admission on 22 December 1986. This period of practice, added to his full-time professorship, adds up to the requisite five years within the seven years prior to December, 1986. *See* Rule 14 a (iv).

## II. *Unauthorized Practice and Rule 14*

But there is another problem to address. As an alternate ground for its adverse recommendation, the board said that even if the applicant was engaged in the practice of law from mid–1983 to December 1986, it would not count that time, because it was, in the board's view, the unauthorized practice of law.

Once again, the board's view is not without support. In the case of Robert Melvin K., for instance, the board concluded that a substantial period of Mr. K.'s claimed five years of practice had been performed in Maryland in violation of Art. 10, § 1.[2] The board further opined that "such period of practice cannot be counted to satisfy the practice requirements of Rule 14." Board of Law Examiners report of 23 September 1977 at 1. The board also believed Mr. K.'s entire experience to be insufficient to justify admission under the rule. We denied admission by order dated 3 January 1978. Of similar purport seem to be the cases of John O. (admission denied 10 May 1985) and Michael Irving H. (admission denied 9 January 1980). *But see* the board's recommendation in Alan S.D., dated 6 June 1977, where it counted as the practice of law for Rule 14 purposes litigation by a non-Maryland attorney in the United States District Court for the District of Maryland.

Nor is the board's position in this case unique to Maryland. As the Supreme Court of Arkansas has reasoned:

It was never intended that the requirement of three years of active practice of law [required for admission on motion by Arkansas Bar Admission Rule XI] could be met by

---

**2.** Art. 10, § 1 provides:

A person, except as provided in § 14A of Article 27 of the Annotated Code, may not practice the profession or perform the services of an attorney-at-law within this State without being admitted to the bar as hereinafter directed; and any person who shall give legal advice, represent any person in the trial of any case at law or in equity ... or prepare any written instrument affecting the title to real estate, or give advice in the administration of probate of estates of decedents in any of the orphans' courts of this State, for pay or reward, shall be deemed an attorney-at-law for purposes of this article. The provisions of this section do not apply to § 32 (b) [dealing with certain corporate house counsel].

*See also* Md. Code (1987 Repl.Vol.) Art. 10, § 32 (a):

Any person who exacts, demands, takes, or receives from any person whatsoever any fee, gratuity, gift or reward for his advice or service as an attorney at law without having been admitted to the bar agreeably to the provisions of this article is guilty of a misdemeanor....

*And see* Rule 5.5, Rules of Professional Conduct.

practice in Arkansas. This could only be done by engaging in the unauthorized practice of law. Such a construction of the rule would result in an absurdity.

*Undem v. State Bd. of Law Examiners,* 266 Ark. 683, 696, 587 S.W.2d 563, 570 (1979). *See also In Re: Petition of Olsen,* 112 R.I. 673, 674–675, 314 A.2d 140, 141 (1974). *But see Application of Brewer,* 506 P.2d 676, 678–679 (Alaska 1973) (service as Alaska judge, by one not admitted to Alaska bar, counts for purposes of admission on motion); and *Sullivan v. Kentucky State Bd. of Bar Examiners,* 563 S.W.2d 713 (Ky.1978) (under Kentucky SCR 2.110, providing that "active engagement in the teaching of the law shall be considered active engagement in the practice of law," teacher who taught at Kentucky law school for requisite period, while not licensed in Kentucky, would be admitted).

The Attorney General has opined that

anyone practicing any type of law or giving any type of legal advice in Maryland for remuneration must first be admitted to the Maryland Bar. . . . [Article 10, § 1's] broad prohibition against the unauthorized practice of law clearly purports to encompass within its application all law. . . .

61 Op. Att'y Gen. 43, 44 (1976). Under that reasoning, the applicant before us was engaged in unauthorized practice from mid–1983 at least until the date of his petition. If the practice was unauthorized, the precedents suggest, that time should not be counted. But the Attorney General's sweeping language cannot be read literally.

For example, among the activities included within "practice of law" by Article 10, § 1 is the preparation, for remuneration, of "any written instrument affecting the title to real estate. . . ." *See* n. 2, *supra.* A legal secretary, working for a weekly wage, would violate the literal language of this prohibition by typing a deed. Law clerks and others who undertake various tasks under the supervision of licensed lawyers might also be involved in unauthorized practice. The Attorney General himself has recognized that

a phrase such as "practice of law" may mean different things in different contexts. 68 Op. Att'y Gen. 48, 54–65 (1983). There the Attorney General explained that the phrase "practiced law in this State for at least ten years" as used in Article V, § 4 of the Constitution, prescribing the qualifications for the office of Attorney General, means something quite different from (and much less restricted than) the meaning of "practice of law" for purposes of Rule 14 or unauthorized practice. *Id.* at 54–65 & n. 13. " '[L]iteralism and verbalism must yield to the essential and underlying claims of the people of the State to have a reasonable and effective government.' " *Id.* at 58 (quoting *County Commr's v. Supervisors of Elec.*, 192 Md. 196, 208, 63 A.2d 735, 740 (1949)).

A similar distinction was drawn in *Gazan v. Heery*, 183 Ga. 30, 42, 187 S.E. 371, 378 (1936). That case involved a statutory qualification for the office of chief judge of the Municipal Court of Savannah: practice of law for at least five years. Heery was appointed chief judge, and counted as part of the five years his prior service as an associate judge of the court. But another statute prohibited a municipal court judge from practicing law, so it was asserted that Heery lacked the necessary period of practice. The Supreme Court of Georgia rejected this argument:

> The words "practice of law" may have an entirely different meaning in a statute designed to prevent the practice of law by one not qualified to do so, from that which the same expression should have in determining qualification to hold judicial office. Words may be given one meaning in one statute, and an entirely different meaning in a different statute, determined by the character and purpose of the legislation. While a judge of the municipal court may not be engaged in the practice of law in the ordinary sense, yet he is dealing with the law, and acquiring by decision and disposition of cases ... knowledge and experience in law ... [that] may enhance his

qualifications more than an active practitioner at the bar during the same period.

183 Ga. at 42, 187 S.E. at 378.

We are persuaded that "practice of law" as used in the unauthorized practice statutes need not be read as synonymous with "practice of law" as used in Rule 14. The question is the goal or objective of each enactment and the context within which the words are used. *See Kaczorowski v. City of Baltimore,* 309 Md. 505, 513–514, 525 A.2d 628, 632 (1987). The goal of the prohibition against unauthorized practice is to protect the public from being preyed upon by those not competent to practice law—from incompetent, unethical, or irresponsible representation. 68 Op. Att'y Gen. at 63 n. 13. *See also Undem v. State Bd. of Law Examiners, supra,* 266 Ark. at 695, 587 S.W.2d at 569; and *Appell v. Reiner,* 81 N.J.Super. 229, 236, 195 A.2d 310, 314 (Ch.Div.1963), *rev'd on other grounds,* 43 N.J. 313, 204 A.2d 146 (1964). The purpose of the practice requirement in Rule 14, as we have seen, is to assure a minimum degree of legal competence: "to support a presumption ... that ... [the] applicant is competent in the law on the basis of his experience in practice as well as his success in another State's 'full' bar examination." *In Re Huntley,* 424 A.2d 8, 11 (Del.1980).

The goal of the unauthorized practice statute is achieved, in general, by emphasizing the insulation of the unlicensed person from the public and from tribunals such as courts and certain administrative agencies. *See Lukas v. Bar Ass'n of Mont. County,* 35 Md.App. 442, 443–445, 371 A.2d 669, 671 (1977). The Rule 14 goal is achieved by looking at the actual significance of the legal work that the applicant proffers to show compliance with the "practice of law" requirement. In this case, significant legal work was performed by one already admitted to practice by examination in another state. That work was performed in a way that insulated the practitioner from direct contact with lay clients and the courts and administrative tribunals. The

work also was done under the supervision of a licensed Maryland lawyer. Under these circumstances, that work may be actual practice within the meaning of Rule 14, but not unauthorized practice within the meaning of Art. 10, § 1.

Maryland provides for various activities that might be deemed or clearly are the practice of law, but are not unauthorized practice. *See*, for example, Bar Admission Rules 18 (Legal Assistance by Law Students), 19 (Special Permission for Out-of-State Attorneys to Practice in This State), and 20 c (Special Admission of Out-of-State Attorneys). The first two rules call for the permitted legal work by non-members of the Maryland Bar to be performed under the supervision of a member of the Maryland Bar. The third requires Maryland counsel to participate in court or agency proceedings with the *pro hac vice* lawyer, unless the tribunal waives that presence. And Article 10, § 32 (b) expressly excludes from the unauthorized practice prohibition the work of "an attorney duly admitted to the highest court of another state ... [who is] acting as corporate house counsel in the State of Maryland so long as the activities of such corporate house counsel within the State of Maryland are limited to the giving of advice to the corporation for which that attorney is employed and do not include appearances in the courts, State agencies, or commissions of this State unless the attorney is specially admitted in a case."

The supervised aspect of this applicant's employment comports with the policies established in Bar Admission Rules 18, 19, and 20. Moreover, despite the board's contrary view, we believe his activities were very close to those of corporate house counsel, and thus consistent with the policy of § 32(b).[3] The applicant's legal advice was given

---

3. In fact, the firm that employs the applicant became a professional association in 1985. *See* Md. Code (1985 Repl.Vol., 1987 Cum.Supp.) §§ 5–101 *et seq.* of the Corps. & Ass'ns Art. Such a professional association perhaps could employ house counsel not admitted in

only to the firm, just as house counsel's advice would be given to the employing corporation. In short, the unprotected public simply was not exposed to danger by the applicant's activities; at the same time, those activities were sufficient to constitute the practice of law for Rule 14 purposes.[4]

Because the applicant's work for the law firm is full-time, it seems clear that it is "the principal means of earning his livelihood...." Certainly, no question has been raised as to this, nor does it seem in doubt that his "entire professional experience and responsibilities have been sufficient to satisfy the Board that [he] should be admitted under" Rule 14, save only the board's reservations as to the work done at the Annapolis firm since June 1983.[5]

Since, as we have explained, we find that the applicant's full-time work with the Annapolis law firm constitutes the

---

Maryland if it wished to do so. Md. Code (1987 Repl.Vol.) Art. 10, § 32(b). But the question of whether or not the applicant's full-time position with the Annapolis firm can be analogized to that of corporate house counsel is one that we need not now decide.

4. Article 10, § 11 makes it a misdemeanor for a lawyer to practice "during the time of his suspension, inactive status, or disbarment." Nothing we have said here should be construed as permitting a disbarred or suspended lawyer, or one who is on inactive status, to engage in the practice of law, whether under supervision or otherwise.

5. As a matter of the construction of Rule 14 when the board considered the applicant's "entire professional experience and responsibilities" for the purposes of the practice of law requirement, it should have taken into account his part-time teaching beginning in mid–1983. The rule establishes three categories of activity that may be used to qualify for admission without full examination; one is service "as a judge of a court of record"; another is "full-time teach[ing] of law" at an ABA approved law school; and the third is the actual practice of law. The first and second are not defined as constituting the practice of law, and so far as teaching is concerned, nothing but full-time teaching will satisfy the requirement for work in that category. But when the board is looking to the practice category, and it is directed by the rule to look to an applicant's "entire professional experience," there is no reason why it should not include part-time teaching in the calculus. Teaching law at an approved law school, whether part-time or full-time, is another legally significant activity that does not constitute the unauthorized practice of law.

practice of law under Rule 14, we hold that the applicant, who has already passed the attorney's examination, is entitled to be admitted to the Bar of this State upon completion of the necessary formalities.

THE EXCEPTIONS TO THE REPORT OF THE BOARD OF LAW EXAMINERS ARE GRANTED. THE APPLICANT SHALL BE ADMITTED TO THE BAR OF MARYLAND UPON TAKING THE PRESCRIBED OATH.

COLE, Judge, dissenting:

Today the Court sees fit to admit the petitioner, R.G.S., to the Maryland Bar under Rule 14 of the Maryland Rules Governing Admission to the Bar. Because I do not believe that the specific requirements of Rule 14 have been satisfied, and because I feel that the Court is foreshaking more appropriate remedies in favor of a remedy which will provide the most expeditious resolution of the matter at hand, I respectfully dissent.

Rule 14, in conjunction with Maryland Code (1957, 1987 Repl.Vol.) Art. 10, § 7 [1] allows a member of an out-of-state bar to be admitted to practice in Maryland if he is able to meet certain requirements and pass a special attorneys' examination on procedure and professional responsibility. Under Rule 14(a), the out-of-state attorney must file a petition which states:

---

**1.** Maryland Code (1957, 1987 Repl.Vol.), Art. 10, § 7(a) provides: After becoming an actual resident of the State of Maryland, a member of the bar of any state, district or territory of the United States, who, for five of the preceding seven years, has been engaged as a practitioner, judge or teacher of law, shall be admitted to the bar of this State after having satisfactorily passed an examination given by the State Board of Law Examiners. In addition, as a prerequisite to admission to the bar, each applicant shall provide proof of good moral character. The Court of Appeals may make rules for the content and administration of the examination, the determination of the applicants' character and any other rules necessary to provide for the admission to the bar of persons making application for admission on the basis of this subsection.

(i) that he intends to practice law in this State or that he intends to teach law full-time at a law school approved by the American Bar Association, naming the law school;

(ii) each jurisdiction in which, and each Court by which the petitioner was admitted to the Bar; and whether by examination, diploma privilege or on motion;

(iii) that for at least five of the seven years immediately preceding the filing of his petition he has been regularly engaged in any of the following activities: as a practitioner of law; as a full-time teacher of law at a law school approved by the American Bar Association; or as a judge of a court of record;

(iv) that he has for at least five years before filing his petition been regularly engaged as a practitioner or teacher of the law or a judge or any combination thereof; and that the five years during which he was so engaged was performed within seven years immediately prior to the filing of his petition.

A definition of "practitioner of the law" is provided by Rule 14 d.

For purposes of this Rule a practitioner of the law is defined as a member of the Bar of another State, District or Territory of the United States including Puerto Rico who throughout the period specified in the petition has regularly engaged in the practice of law within the United States and its territories, including Puerto Rico, as the principal means of earning his livelihood and whose entire professional experience and responsibilities have been sufficient to satisfy the Board that the petitioner should be admitted under this Rule. The Board may consider, among other things,

(i) the extent of the petitioner's experience in general practice;

(ii) if the petitioner is or has been a specialist, the extent of his experience and reputation for competence in such specialty;

(iii) if the petitioner is or has been an employee of a law firm, government or a corporation or other employer, the

nature and extent of his professional duties and responsibilities as such employee, the extent of his contacts with and responsibility to clients or other beneficiaries of his professional skills, the extent of his professional contacts with practicing lawyers and judges and his professional reputation among them and

(iv) any professional articles or treatises of which the petitioner has been the author.

I do not question that R.G.S.'s background and professional experience, as more fully articulated in the majority opinion, support a finding that he should not have to sit for the regular bar examination. On the other hand, I do question whether R.G.S. is qualified to sit for the limited attorney bar examination under this Court's prior interpretations of Rule 14.

While the petitioner has extensive professional experience in the law, Rule 14 *requires* that we focus on the seven years preceding the petitioner's filing for admission to the Maryland Bar. As the petitioner made his initial filing on December 22, 1986, the starting point is December 22, 1979.

From December 22, 1979, until May, 1983, (a total of 3 years and 5 months), the petitioner served as a full-time professor at the University of Baltimore School of Law. This nearly 3 and one-half year period is counted toward the 5 of 7 year requirement of Rule 14(a)(iii). Petitioner also avers that since 1983, he has on a full time basis served as "of counsel" with an Annapolis firm. To satisfy the Rule, however, the petitioner must demonstrate that while he served as "of counsel" with the Annapolis law firm he was regularly engaged in the practice of law. The part time teaching of law is not recognized in Rule 14(a)(iii) as a qualifying pursuit.

The State Board of Law Examiners (Board) concluded that the petitioner was not engaged in the practice of law while serving the Annapolis law firm. Specifically, the Board held that the "[h]allmark of the practicing lawyer is responsibility to clients regarding their affairs, whether as

advisor, advocate, negotiator, as intermediary between clients, or as evaluator by examining a client's legal affairs." Letter of State Board of Law Examiners to Court of Appeals dated October 28, 1987. The Board rejected the argument of R.G.S. that law clerks *practice law* and that the mere performance of legal work is the practice of law. In so holding, the Board justifiably relied on and furthered a long standing policy established by this Court and implemented and followed by the Board of Law Examiners.

As a result of this policy many outstanding attorneys, with records as exemplary as the petitioner's, have been forced to sit for and pass the regular Maryland Bar Examination before being admitted to practice law in this State. A review of a sample of these cases will be illustrative of the point.

In 1968, C.L.N., a member of the Wisconsin Bar, petitioned the Board for admission to the Maryland Bar under Rule 14. The Board acknowledged that C.L.N. had been engaged in the practice of law from 1953–1963. During this time, C.L.N. had served as an associate for a law firm, as an Air Force Judge Advocate, and as a legal specialist at the National Labor Relations Board. The Board, however, refused to recognize the duties that C.L.N. performed as a "labor law specialist" with the National Association of Manufacturers as constituting the practice of law. Although C.L.N. had conducted legal research and produced many articles and publications on a broad variety of legal subjects, the Board found that he was not representing a specific client. The Board also found that the research and brief writing which C.L.N. had performed for an attorney in private practice was "service which could have been performed by a law clerk or law student—not necessarily a member of the Bar." This Court accepted the Board's findings and denied C.L.N.'s petition.

In 1972, F.S.H. petitioned the Board for admission to the Maryland Bar pursuant to Rule 14. F.S.H., a member of the Virginia and District of Columbia Bars, had practiced law with a prestigious law firm in Washington, D.C., for 23

years. However, 2 years and 4 months prior to filing his petition, F.S.H. left the law firm for a business venture. Although F.S.H. was only 4 months short of satisfying the 5 of 7 year requirement, this Court affirmed the Board's denial of admission.

In 1975, this Court affirmed the Board's denial of a Rule 14 petition for admission filed by C.P.F. The Board had rejected the argument of C.P.F., a member of the Wisconsin Bar and an employee of the Classified Municipal Employees Association of Baltimore City, that he was regularly engaged in the practice of law by way of his legal research and close working relationship with the legal profession.

> Giving the words used in [Rule 14] their ordinary and usual significance, it cannot be said that one who engages in research and works in close proximity with lawyers is a practitioner of the law. We regard the rule as being mandatory and are of the opinion that, in order to meet the requirements of the rule, a petitioner seeking admission as a practitioner of the law for the required period must have been a practitioner in the traditional sense.

Letter of State Board of Law Examiners to the Court of Appeals dated May 12, 1975.

The Court took the opportunity to discuss what is required for one to be engaged in the "practice of law" in *In Re Application of Mark W.*, 303 Md. 1, 491 A.2d 576 (1985). Mark W., a member of the Pennsylvania Bar, was a hearing examiner for the Maryland Department of Employment and Training for the 9 years preceding his petition for admission to the Maryland Bar under Rule 14. In analyzing that situation we found that the " 'practice of law' is a term of art connoting much more than merely working with legally-related matters." *Id.* at 19, 491 A.2d at 585. This Court affirmed the Board's denial of Mark W.'s petition because his activities were in a very narrow, specialized field and he did not represent clients, either public or private. *Id.* We did, however, note that Mark W. would be permitted to practice law in this State if he were to receive a passing grade on the regular Maryland Bar Examination. *See also*

*In re Petition of Olsen,* 112 R.I. 673, 314 A.2d 140 (1974) (Supreme Court of Rhode Island refused to consider time petitioner spent with Pennsylvania law firm before he was admitted to Pennsylvania Bar in computing a 5 of 10 year requirement for admission of out-of-state attorneys).

If this Court's prior decisions relating to admissions under Rule 14 are to have any precedential value, the petitioner's application should be denied. The petitioner has not directly represented any clients. His activities, although specialized, could be performed by a law clerk or paralegal; they do not amount to the "practice of law" giving those words their ordinary and natural significance.

The majority, however, reverses the Board's recommendation and holds that, under the circumstances presented, R.G.S. was engaged in the practice of law while working with the Annapolis firm. Thus, R.G.S. was qualified to sit for the attorney examination. The majority contends that this *ad hoc* determination furthers the purpose of Rule 14. What the majority fails to recognize is that it has reversed this Court's approach to Rule 14, and has done so without subjecting the issue to rigorous debate.

In my view before rejecting an established policy the matter should, at a minimum, be subjected to input and discussion by the organized bar of this State. In this manner, the Board, which has undoubtedly acquired expertise in this area, would be able to comment on the ramifications and potential pitfalls which particular readings of Rule 14 would foster. Furthermore, this approach would allow the State Bar to fully participate in a discussion of the pros and cons relating to "of counsel" practice. This is the least that should be done before changing the procedure.

Of course, the most appropriate action for the Court to take is to amend the Rule.[2] Amending the Rule would

---

**2.** Although Rule 14 has been amended numerous times over the years, reference is limited to the changes which are pertinent to this discussion. An amendment in 1962 specified that a petitioner must have been engaged in the practice of law for five years within the seven

enable the Court, the Board, the Bar, and the Rules Committee to arrive at a more considered judgment than that offered by the majority decision. Furthermore, amendment of the Rule provides a means by which the Court can avoid the strained and inconsistent construction of the language of Rule 14 which is part and parcel of the majority's decision. Amendment of the Rule also allows the Court to avoid the appearance of selective treatment which is manifested in this case by virtue of the Court's sudden change in philosophy as to Rule 14.

As I see it, the majority appears too concerned with the eligibility of this petitioner rather than assuring full consideration by the legal community of the impact of a change in the Rule. It seems to me that the citizens of this State are more adequately protected if the attorneys admitted to practice under Rule 14 are required to have been engaged in the practice of law in the traditional sense prior to their admission. This interpretation is also consistent with the plain and ordinary meaning of the words "practitioner of law" as developed in our cases. Because I find no need to rush a change in Rule 14 and because I find the method of change proposed by the majority unacceptable, I respectfully dissent.

Chief Judge MURPHY and Judge McAULIFFE have authorized me to state that they concur with the views expressed herein.

---

years preceding the filing of the petition for admission. A "practitioner of law" was defined as a person who maintained an office and engaged in a general practice of law or was so employed by a general practitioner. An amendment in 1965 expanded the definition of a "practitioner of law" to include government employees and employees of private companies who had experience in the general practice of law, including trial experience. The Rule was further amended in 1966 to provide that a "practitioner of law" included anyone who engaged in the practice of law as the principal means of earning his livelihood.