·WILLIAM G. STACK, PLAINTIFF-APPELLANT, v. P. G. GARAGE, INC., DEFENDANT-RESPONDENT.

Argued April 16, 1951—Decided May 7, 1951.

*Mr. William A. Kaufmann* argued the cause for the appellant.

*Mr. Albert J. Shea* argued the cause for the respondent.

*Mr. Milton T. Lasher* as *amicus curiae* filed a brief on behalf of the Committee on the Unlawful Practice of Law of the New Jersey State Bar Association.

The opinion of the court was delivered by

VANDERBILT, C. J. This is an appeal from a judgment of the Hudson County District Court in favor of the defendant. The appeal, taken to the Appellate Division of the Superior Court, has been certified here on our own motion.

The facts are not in dispute. The plaintiff Stack, a licensed realtor, made an oral agreement with Peter Gatto, the president of the defendant corporation, to obtain a reduction in the 1948 tax assessment on the defendant's real estate in Hoboken. Nothing was said about the amount of compensation or Stack's hiring counsel to appear on the appeal to the Hudson County Tax Board, the rules of which require a corporation to be represented by a member of the bar. Stack prepared and filed a petition of appeal and engaged an attorney-at-law to examine and cross-examine witnesses at the hearing. Gatto knew nothing of this arrangement until after the present suit was commenced. The county tax board granted a reduction in the assessment and each side appealed to the Division of Tax Appeals. Before there was any hearing on these appeals, they were withdrawn and Stack applied to the City of Hoboken for a refund of $680.06, the amount of the reduction in taxes resulting from the reduction in assessment ordered by the County Tax Board. After the defendant received the city's check, Stack sent it a bill for $340.03, half of the tax savings, and when the defendant refused to pay it, he instituted this suit.

At the trial the plaintiff testified that his bill for services included those rendered by the attorney and that he intended to pay him one-half of the fee received. The trial court held that part of the plaintiff's services constituted an unauthorized practice of law and that therefore the agreement was illegal and unenforceable. From this judgment for the defendant this appeal was taken.

In determining what is the practice of law it is well settled that it is the character of the acts performed and not the place where they are done that is decisive. The practice

of law is not, therefore, necessarily limited to the conduct of cases in court but is engaged in whenever and wherever legal knowledge, training, skill and ability are required. As was stated in *Tumulty v. Rosenblum,* 134 *N. J. L.* 514, 517–18 (*Sup. Ct.* 1946):

"The practice of law is not confined to the conduct of litigation in courts of record. Apart from such, it consists, generally, in the rendition of legal service to another, or legal advice and counsel as to his rights and obligations under the law, * * * calling for * * * a fee or stipend, *i. e.*, that which an attorney as such is authorized to do; and the exercise of such professional skill certainly includes the pursuit, as an advocate for another, of a legal remedy within the jurisdiction of a *quasi*-judicial tribunal. Such is the concept of *R. S.* 2:111–1, classifying as a misdemeanor the practice of law by an unlicensed person."

There can be little doubt that the jurisdiction of the county tax board is *quasi*-judicial in nature and that the prosecution of an appeal before it constitutes the practice of law. It requires the qualification of experts, the examination and cross-examination of witnesses, and the admission and exclusion of evidence. It frequently necessitates the construction of a statute, the application of court decisions, and occasionally the furnishing of a brief as to the law and facts. That appearances before the Hudson County Tax Board require the services of a lawyer and constitute the practice of law is recognized by the rules of the board itself which permit only members of the bar of this State to prosecute an appeal before it in a representative capacity. The plaintiff was well aware of this, for he did in fact engage an attorney to conduct the hearing before the county tax board. In these circumstances it is readily apparent that the plaintiff in agreeing to prosecute the appeal for the defendant was contracting to furnish legal services without being licensed to do so. Not only is such a contract illegal as against public policy, but by entering into and carrying out such an agreement the plaintiff has violated *R. S.* 2: 111–1 wherein such conduct is made a misdemeanor. The contract between the plaintiff and the defendant is entire

and not severable, and it follows that when a part of it is illegal and in violation of a penal statute the entire contract is illegal, void and unenforceable and the court will leave the parties where it finds them, *Kenny v. Patterson Milk & Cream Co.,* 110 *N. J. L.* 141 *(E. & A.* 1933); *Gionti v. Crown Motor Freight Co.,* 128 *N. J. L.* 407 *(E. & A.* 1942).

In an effort to avoid the consequences of his illegal conduct, the plaintiff relies upon arguments which have no foundation in fact or law. First, he would have us believe that he had retained an attorney to conduct the hearing with the consent of or by virtue of authority given him by the defendant's president, despite the fact that Gatto testified he knew nothing of any such arrangement and was unaware even of the fact that the services of a lawyer would be required. Second, he asserts that the attorney, although retained by the plaintiff, actually represented the defendant. Aside from the defendant's ignorance of this alleged arrangement, this is inconsistent with the fact that the attorney never made any claim against the defendant for a fee for his services, whereas the plaintiff admittedly brought this suit to recover a fee for his own services (the fact that an attorney was employed is not even mentioned in the complaint) and out of his recovery intended to pay the attorney. The conclusion is inescapable that the attorney was retained by the plaintiff and was to be paid by the plaintiff and that the relationship of attorney and client existed only between the attorney and Stack and not between the attorney and the defendant.

Finally, the plaintiff would make much of the fact that while the agreement with the defendant may have called for the practice of law he personally did nothing requiring legal knowledge, training, skill and ability, but instead retained an attorney to conduct the hearing before the county tax board. Thus he seeks to escape the penalties flowing from the unauthorized practice of law. Such circumstances, however, operate not to relieve the plaintiff, but only to embroil the attorney in the illegal scheme. If such subterfuge

were permitted, it would result in a destruction of the confidential relationship that an attorney bears to his client. It would permit one not a lawyer to be engaged in the business of handling legal matters for others. A layman could spend his time making contacts and obtaining "clients," conduct all negotiations with them, and then retain lawyers unknown to the "client," to perform the legal work. It would mean that a corporation would be free to engage in the practice of law. See *N. J. Photo Engraving Co. v. Schonert & Sons*, 95 *N. J. Eq.* 12 (*Ch.* 1923); *Unger v. Landlord's Management Corp.*, 114 *N. J. Eq.* 68 (*Ch.* 1933); *Rule* 1:8–21. Such a practice, if tolerated, would destroy the confidential relationship of attorney and client, thwart the control of the courts over the practice of law, and irreparably impair the sound administration of justice.

The judgment appealed from is affirmed.

*For affirmance*—Chief Justice VANDERBILT and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.