81 N.J. Super. 229 (1963)
195 A.2d 310
FREDERICK W. APPELL, PLAINTIFF,
v.
ROBERT J. REINER AND ELSIE REINER, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 1, 1963.
*231 Mr. Harold J. Brown for plaintiff (Messrs. Joyce & Brown, attorneys).
Mr. Martin J. Kole for defendants.
COLLESTER, J.S.C.
Plaintiff Frederick W. Appell instituted an action in this court to foreclose two mortgages, allegedly in default, given by defendants Robert J. Reiner and Elsie Reiner, his wife. Defendants counterclaimed to cancel said mortgages on the ground, inter alia, of a lack of consideration.
At the conclusion of plaintiff's case defendants moved pursuant to R.R. 4:42-2(b) to dismiss the complaint because, *232 upon the facts and law, plaintiff has shown no right to relief. They further sought judgment directing the cancellation of said mortgages. In view of the legal questions raised, the court elected to suspend completion of the trial pending submission of briefs, and decision on the motion was reserved.
At this stage of the proceedings all evidence presented and the legitimate inferences to be drawn therefrom must be resolved in favor of the plaintiff. Furthermore, the court does not weigh the testimony.
Plaintiff resides in New York and is a New York attorney. He is a member of the law firm of Austin, Burns, Appell and Smith, with offices at 535 Fifth Avenue, New York City. He is not a member of the Bar of the State of New Jersey. Defendants reside in Teaneck, New Jersey, in a home owned by Elsie Reiner. Robert J. Reiner owns and operates Reintex, Inc., a New Jersey corporation, which was engaged in the textile manufacturing business and occupied a factory building, owned by Reiner, located in Rochelle Park, New Jersey. Elsie Reiner owns one qualifying share of stock in said corporation.
Plaintiff had been a friend of defendants for many years. He had participated in the incorporation of Reintex, Inc. in 1950, had served as a director and had represented said corporation as its attorney under an annual retainer agreement. He terminated his connection with the corporation in 1954 or 1955. Plaintiff had also drawn the wills of both defendants, represented them in the purchase of their home in Teaneck, and performed other legal services on their behalf.
In September 1960 he represented Reiner in a contest over the will of the latter's father, who died a resident of the State of New York. At a conference with Reiner in his New York law office concerning the litigation, plaintiff was informed that a satisfactory settlement of the will contest would be of little benefit to Reiner since Reintex, Inc. was heavily in debt, business prospects were poor, and the money from the estate would go to pay creditors. Reiner advised plaintiff that his wife was personally liable as endorser on a $25,000 note of the *233 corporation, and that he personally was liable on several large obligations of the corporation. Plaintiff testified that Reiner asked him to act as their attorney, to advise and assist them in their financial dilemma.
Plaintiff told Reiner, and later Mrs. Reiner, that he would act as their attorney for one year, his compensation to be dependent upon the extent of the services rendered by him. Upon learning that Reintex, Inc. had corporate liabilities of $224,661 and assets of $192,827, plaintiff advised defendants he must be "secured" for the payment of his fee for legal services he would render. Plaintiff thereupon proposed that second mortgages be placed upon their respective properties as collateral security for his prospective fee. He said that such a procedure would serve a dual purpose  security to him and the "insulation" of their property from their various creditors.
Accordingly, on October 20, 1960, one month after their initial agreement, defendants gave plaintiff a mortgage note in the sum of $10,000 and executed a mortgage in said sum encumbering their Teaneck residence which was owned by Elsie Reiner. Twelve days later, November 1, 1960, defendants gave plaintiff another mortgage note in the sum of $7,500 encumbering the Rochelle Park factory property owned by Robert J. Reiner. Both obligations were to mature in one year, bore interest at 6% per annum payable quarterly, and required amortization payments of $1,000 every three months.
Plaintiff concedes the $17,500 obligations were not owed on the dates they were executed. On October 7, 1960 he had written a letter to defendants stating that his fees for current services rendered to them and Reintex, Inc., as of that date, were $250. He testified he had informed defendants in September 1960 that he estimated his legal fee for all services to be rendered would be $5,000.
When plaintiff was retained by defendants in September 1960, the primary obligations of Reintex, Inc. were: Peoples Trust Company of Paramus, N.J. (Peoples Trust Co.)  $25,000, secured by personal endorsements of Robert J. Reiner and Elsie Reiner; the Bank of Saddle Brook and Lodi, N.J. *234 (Saddle Brook Bank)  $25,000, secured by endorsement of Robert Reiner and pledged warehouse receipts for greige goods stored at Paterson, N.J.; Walter Kidde Acceptance Corp., Bloomfield, N.J. (Walter Kidde)  $15,214, secured by a conditional sales contract of Reintex, Inc.; John Stack of Garfield, N.J., insurance premiums due from Reintex, Inc.  $3,000, secured by a promissory note of Robert J. Reiner; The Chemstrand Corporation, New York City (Chemstrand)  $106,000, on which Robert J. Reiner was also personally liable; and $1,000 due to the aforesaid warehouse.
Plaintiff testified that he rendered legal services to defendants over a period from September 21, 1960 to March 12, 1962. He said his services consisted of numerous conferences with Robert J. Reiner in his New York office and numerous telephone conversations with him; that he "summarized" defendants' assets and liabilities and investigated documents signed by them and held by the New Jersey banks; that he conferred with the bank officers personally in New Jersey, and by telephone and letter; that he conferred with Walter Kidde Acceptance Corp. at its office in New Jersey by telephone and letter; that he did the same with John Stack of Garfield, New Jersey, and that in May 1961 he held a conference in his New York office attended by Mr. and Mrs. Reiner and representatives of Chemstrand, at which time a settlement agreement between Reintex, Inc. and Chemstrand was effected. In summary, plaintiff testified that he in some instances personally secured extensions of credit from Reintex creditors; in others he advised, directed and guided Reiner in obtaining such extensions; that he advised and guided Reiner in the methods of payment of such debts through the sale by Reiner of the greige goods, and that the final result was payment of all creditors except Chemstrand, where a settlement was effected, and Walter Kidde, who repossessed its machinery.
The evidence shows that after the granting of numerous extensions of time to pay creditors, Reintex, Inc. was able to sell its stored greige goods and all creditors were paid in full, *235 with the exception of Walter Kidde and Chemstrand. Walter Kidde repossessed its machinery and did not sue for a deficiency. Chemstrand on June 6, 1961 settled its claim of $106,298.95 against Reintex in return for the assignment of greige goods, accounts receivable and cash in the sum of $2,100. It is conceded that at no time throughout the period did any creditors threaten suit. During the proceedings to repossess the machines by Walter Kidde, plaintiff conferred with a New Jersey attorney to ascertain the New Jersey law applicable to such proceedings.
Plaintiff admits that in May 1961, during the conference with representatives of Chemstrand which resulted in the settlement of its claim, he told them his fee due from the Reiners was $5,000 and that he held second mortgages as security. He further admits that in conversations with other creditors of defendants he informed them he held second mortgages on the Reiners' properties.
On April 27, 1961 plaintiff submitted a bill in the sum of $500 to Reintex for services rendered concerning Walter Kidde's claim. It was unpaid. On June 1, 1961 plaintiff submitted a bill addressed to the individual defendants and Reintex, Inc. in the sum of $11,049.87, after crediting a payment of $250 made by Reintex, Inc. on October 27, 1960. On July 11, 1961 defendants paid plaintiff $1,045. On March 12, 1962 plaintiff submitted a supplemental bill for $1,078.11.
Defendants not having paid plaintiff's bills for services, the latter on March 23, 1962 filed his complaint to foreclose the two mortgages they had given him. He claims there is due $11,082.98, together with interest thereon.
Defendants move to dismiss this foreclosure action on the ground, inter alia, that the consideration for said mortgages is based upon an illegal agreement which is void and against public policy, in that the mortgages were given as security to pay legal fees to one unauthorized to practice law. See Slater v. Gittleman, 104 N.J. Eq. 172 (E. & A. 1929).
*236 While this is a mortgage foreclosure proceeding, equity looks to the substance rather than to the form. It is conceded by plaintiff that the money allegedly due and which is secured by the mortgages, represents the balance of a fee charged defendants for legal services which he rendered. Accordingly, this action must be viewed in the same light as a suit for legal fees.
The practice of law is not confined to the conduct of litigation in the courts, but is engaged in whenever and wherever legal knowledge, training, skill and ability are required. In general, all advice to clients, and all actions taken for them in matters connected with the law, constitute the practice of law. Under modern conditions it consists in no small part of work performed outside of a court and having no immediate relation to proceedings in court. Stack v. P.G. Garage, Inc., 7 N.J. 118, 121 (1951); In re Baker, 8 N.J. 321, 340 (1951); Tumulty v. Rosenblum, 134 N.J.L. 514, 518 (Sup. Ct. 1946); Harriman v. Strahan, 47 Wyo. 208, 33 P.2d 1067 (Sup. Ct. 1934); In re Opinion of the Justices, 289 Mass. 607, 194 N.E. 313 (Sup. Jud. Ct. 1935); 5 Am. Jur., § 3, p. 262. Plaintiff concedes the work undertaken by him on behalf of defendants was the practice of law.
Admission to the practice of law in this State and the discipline of persons so admitted is vested exclusively in our Supreme Court. Const. 1947, Art. VI, § II, par. 3. The privilege of engaging in the practice of law is strictly confined to individual attorneys who have been duly licensed upon a proper showing of character and competency, and who are at all times subject to rigid rules of conduct. Such regulation is designed to serve the public interest by protecting "the unwary and ignorant from injury at the hands of persons unskilled or unlearned in the law." New Jersey State Bar Ass'n. v. Northern New Jersey Mortgage Associates, 22 N.J. 184, 195 (1956); New Jersey Bar Ass'n. v. Northern New Jersey Mtge. Associates, 32 N.J. 430, 436 (1960). In New Jersey an attorney upon his admission to the bar becomes an officer of the court, subject to its rules and disciplinary action. *237 In re Merrill, 88 N.J. Eq. 261, 266 (Prerog. 1917); In re Bowers, 89 N.J. Eq. 307, 309 (Ch. 1918); Raimondi v. Bianchi, 100 N.J. Eq. 238, 240 (Ch. 1926).
Under the rules of court promulgated by the Supreme Court, no person may practice law in this State unless he has been admitted to practice as an attorney at law of this State, is in good standing and is domiciled in New Jersey. R.R. 1:12-1(a). The intent of the rules is that the practice of law and all its privileges is limited to New Jersey attorneys. The sole exception provided under the rules is that an attorney from another jurisdiction may, at the discretion of the court, be admitted pro hac vice, to appear in our courts provided the pleadings therein are signed by a New Jersey attorney, who shall be responsible therefor. R.R. 1:12-8; 1:12-1(c)(3). The stringent control of the practice of law in New Jersey under the rules of court is supplemented by statute, N.J.S. 2A:170-78 et seq., which provides that the unauthorized practice of law is punishable under the Disorderly Persons Act.
Plaintiff, who is not authorized to practice law in this State, contends that he rendered the services to the defendants as a New York attorney; that he is entitled to be compensated therefor, and that the consideration for the two mortgages is a valid, legal consideration.
The narrow issue involved is whether or not the legal services rendered by plaintiff constituted the practice of law in New Jersey.
If attorneys from foreign jurisdictions were able to practice law in New Jersey, they would, in effect, be holding themselves out as attorneys with the privileges attendant thereto, although they would not be subject to the control of our Supreme Court and our ethics and grievance committees. Thus, they would be permitted to practice law in an uncontrolled atmosphere. Hence, in attempting to define the outer limits of what constitutes the practice of law in New Jersey, the definition adopted should be one sufficiently broad to permit the vigorous enforcement of the strong policy of *238 judicial control over members of the bar for the protection of the public interest.
In determining whether a foreign attorney is practicing law in New Jersey we should consider the following factors: (1) were the services rendered in the jurisdiction of this State; (2) were the services and legal advice rendered based upon the laws of this State; (3) did the legal services relate to a transaction, property right or subject matter, the res of which is in New Jersey, and (4) if litigation might result, would the forum be the courts of this State. In the determination of the question of whether or not the services were rendered within the jurisdiction of New Jersey, I am satisfied that the contact or method of communication between the foreign attorney, the client and the other parties should not control. The mere fact that contact or communication is by letter or telephone should not be the decisive factor.
Let us consider the evidence in the case sub judice as measured by the foregoing criteria. Defendants were domiciled, and their business, Reintex, Inc., was located, in the State of New Jersey. All of their creditors with whom negotiations for an extension of credit ensued were located in New Jersey, except Chemstrand. The legal rights of defendants and Reintex, Inc., and of all their creditors, involved questions of New Jersey law. In the event litigation were to result from a failure of such negotiations, recourse necessarily would have been to the courts of this State. The greige goods which Chemstrand had sold to defendants were located in the Rochelle Park plant and warehouses in Paterson. The textile machines purchased by Reintex, Inc. from Walter Kidde were located in Rochelle Park and were repossessed under the provisions of New Jersey law. Here the plaintiff, a New York attorney, is the only non-New Jersey contact in this case. He performed services in this jurisdiction by personal visits to the Reintex, Inc. plant and the two New Jersey banks involved. Other contacts with the creditors were made by telephone and letters.
*239 I am satisfied that plaintiff must be held to have been engaged in the practice of law within the jurisdiction of this State although unauthorized to do so by law. Since he is not admitted to practice in this State, his status is no greater than a layman. To hold otherwise under the circumstances of this case would grant carte blanche approval to nonresident attorneys of foreign jurisdictions to practice law in this State, completely uncontrolled and free from the supervision and discipline of our Supreme Court.
No one is entitled to recover compensation for legal services rendered in the State of New Jersey unless he is a duly admitted attorney of this State, and an agreement to perform services by one unauthorized to practice law is illegal and void. Morris v. Muller, 113 N.J.L. 46, 52 (E. & A. 1934); Vogel v. Lotz, 60 A.2d 815, 26 N.J. Misc. 281, 283 (City Dist. Ct. 1948), 7 C.J.S. Attorney and Client § 165, p. 1022; 4 A.L.R. 1088.
In Taft v. Amsel, 23 Conn. Sup. 225, 180 A.2d 756 (Super. Ct. 1962), the plaintiff, a New York attorney, sued defendants to recover compensation for legal services. Their association grew out of a summer neighbor relationship in Westport, Connecticut. Plaintiff rendered advice and services in the establishment of a national transportation business by the acquisition of several trucking lines and the formation of corporations dealing with such business. The court held that plaintiff, who was not a Connecticut attorney, could not recover compensation for services as an attorney rendered within the jurisdiction of that state.
In Harriman v. Strahan, 47 Wyo. 208, 33 P.2d 1067 (Sup. Ct. 1934), plaintiff was an attorney admitted to practice law in the State of Washington, the District of Columbia, and before the United States Supreme Court. He brought suit in the State of Wyoming to recover attorney fees for services rendered the defendant, a Wyoming lawyer, in endeavoring to obtain his reinstatement as a practicing lawyer in said state. His work included extensive trips with the defendant to confer with members of the Wyoming Bar Association to *240 the end that they might appear in court proceedings in order to obtain a petition for rehearing. The court held that since he was not admitted as an attorney in Wyoming he was not entitled to recover on his suit for fees. The court stated:
"Though a man may be admitted to the bar in other states, he is, when he has failed to comply with the laws of this state, in the same position in this respect as any other man, and if we grant an exemption to one man, we should logically grant it to others who are not, in principle, situated differently, and we would thus be forced to recognize the right to free practice of the law, which does not directly involve appearance in court, on the part of any one, whether learned or unlearned, and otherwise qualified or not, thus leaving the public in hopeless confusion as to whom to consult in case of necessity. That, of course, would not do. But even if we could properly draw a dividing line between those who have been admitted to practice somewhere and those who have not, it would still be inadvisable and contrary to the public interests to have in the state a body of men engaged in the practice of the law, who are not amenable to the same disciplinary measures as men who have been regularly admitted." (33 P.2d, at page 1069)
See also Harris v. Clark, 81 Ind. App. 494, 142 N.E. 881 (1924); Browne v. Phelps, 211 Mass. 376, 97 N.E. 762 (Sup. Jud. Ct. 1912); 4 A.L.R. 1088; 118 A.L.R. 646, 652.
I do not intend to imply that if a foreign attorney, actively engaged in the practice of law in his state, is employed by a resident of New Jersey for a specific case or for general advice relating to services to be rendered within the jurisdiction of the foreign state, he will be denied a recovery in this State for the value of his services, even though he may, as incidental to his employment, find it necessary to occasionally come to this State for the better performance of his duty. No such exceptional situation has been shown from the facts herein, nor am I called upon to express an opinion thereon.
Neither do I intend to hold that plaintiff could not recover for his legal services if he had been retained by defendants solely to negotiate a settlement with Chemstrand, whose offices are located in New York, the jurisdiction wherein plaintiff is duly licensed to practice law. The difficulty with plaintiff's *241 position in the instant case is that admittedly he was not retained for that purpose. He was engaged to render services to advise, assist and to secure extensions of credit and to compromise the claims of all the creditors of Reintex, Inc., all of whom were located in New Jersey, except Chemstrand.
Plaintiff admittedly makes no attempt to separate the services rendered in the Chemstrand claim from the other creditors, either in his explanation of services rendered or in an apportionment of his charges. He says he is unable to do so. Since the contract between plaintiff and defendants is entire and not severable, it follows that when part of it is illegal and in violation of the statute, N.J.S. 2A:170-78 et seq., the entire contract is illegal, void and unenforceable. Stack v. P.G. Garage, Inc., supra, 7 N.J., at page 122.
I am satisfied that the agreement upon which plaintiff bases his claim is illegal and contrary to the public policy of this State. It is fundamental that the law will not assist a person to reap the fruits or benefits of an unlawful act. Slater v. Gittleman, 104 N.J. Eq. 172 (E. & A. 1929); Harriman v. Strahan, supra; Stack v. P.G. Garage, Inc., supra. The consideration of the two mortgages, which plaintiff seeks to foreclose, was based upon an illegal agreement. Hence, the mortgages are invalid and this court will not enter a judgment to foreclose the same. The motion by defendants to dismiss the complaint will be granted.
In view of the foregoing decision, it is unnecessary to consider the other grounds urged by defendants in their motion to dismiss.
Since the consideration for said mortgages was illegal, the question arises  should this court grant the relief sought by defendants in their counterclaim, i.e., the cancellation of the mortgage notes and the mortgages given by defendants to plaintiff? Ordinarilly, where the agreement between the parties is illegal and void, the court leaves the parties where it found them, lending its aid to neither. Slater v. Gittleman, supra. To adopt such rule in the instant case, in my opinion, would result in a manifest injustice.
*242 Here plaintiff was in a superior and dominating position. As an attorney he knew the limitations of his authority to engage in the practice of law, a subject with which defendants as laymen undoubtedly were not familiar. They unquestionably relied upon his advice and, in view of their financial situation, which appeared desperate at the time, were readily influenced by plaintiff to execute the mortgage notes and mortgages which he insisted upon and which were for amounts of money not then owed to plaintiff.
The parties herein did not stand on equal footing. In my opinion, from the evidence submitted by plaintiff himself, there was oppression on the one side and submission on the other. Where the parties are thus situated, the persons oppressed are not regarded as in pari delicto. They are not precluded from invoking affirmative relief in equity to set aside the agreements so executed. Ryan v. Motor Credit Co., Inc., 130 N.J. Eq. 531 (Ch. 1941), affirmed 132 N.J. Eq. 398 (E. & A. 1942).
Judgment will be entered on the counterclaim directing that the promissory notes and the mortgages executed by the defendants be cancelled and that such mortgages shall no longer constitute a lien on the lands and premises of the defendents.