254 N.J. Super. 480 (1991)
603 A.2d 995
R.H., PLAINTIFF,
v.
M.K., DEFENDANT.
Superior Court of New Jersey, Chancery Division Middlesex County, Family Part.
Decided November 1, 1991.
*482 Frances M. Merritt for plaintiff (Katzenbach, Gildea & Rudner, attorneys).
Jan L. Bernstein for defendant (Riker, Danzig, Scherer, Hyland & Perretti, attorneys).
PALEY, J.S.C.
The parties to this divorce action are practicing professionals: plaintiff husband, a pediatric dentist, and defendant wife, a psychologist. They met in August, 1990. By mid-September, 1990, three weeks after their introduction, having discussed defendant's earnest desire for a child, the parties agreed to marry; they were married on December 9, 1990.
From the outset, the parties' relationship was less than sublime: as early as January 4, 1991, plaintiff complained to the defendant in writing about a lack of mutual trust; in February, 1991, plaintiff raised the possibility of divorce.
Defendant became pregnant in November, 1990, and shortly thereafter advised the plaintiff of her pregnancy. Plaintiff wrote to the defendant in early January, 1991 expressing his view of the effects of the marital strife upon the expected baby:
"I will not under any circumstances begin to raise a child between disparate parents. There must be harmony and uniformity by mutual agreement and compromise."
"It has become, unfortunately, increasingly obvious to me that we cannot exist together as a family unit. I don't think [the baby] will ever have a father unless you come to some serious terms about where you are headed."
The parties were living in defendant's home when their daughter, R., was born on August 6, 1991. On August 15, 1991, apparently in response to demands of the defendant, plaintiff left the home. He has not spoken to defendant since then, and he has neither seen nor visited with his daughter since that date; the child has been in the sole care of the defendant since that time.
Plaintiff filed for divorce immediately after the separation. Each party thereafter retained counsel. Following negotiation, *483 the parties entered into an October 22, 1991, Property Settlement and Separation Agreement, presented before the Court as part of the parties' divorce on that date. The Agreement is unremarkable but for the following provisions:
TERMINATION OF PARENTAL RIGHTS AND OBLIGATIONS OF R.H.
Any and all parental rights of plaintiff, [R.H.], toward the child, [R.], born August 6, 1991, be and are hereby terminated. Plaintiff assumes for the purposes of this surrender of parental rights that the child born of the marriage is his child.
Full, sole and complete legal and physical custody of the child shall be with the defendant-counterclaimant, [M.K.] Plaintiff shall have no visitation whatsoever with the child now or at anytime in the future no matter what the circumstances.
Plaintiff has not visited with nor seen the child since August 15, the first week of her birth. There has been no bonding between the child and the father. Since her birth, the child has been in the sole and exclusive care and custody of the mother, [M.K.], and has bonded with her.
Plaintiff surrenders all parental rights and obligations to the child, [R.], knowingly, willingly and voluntarily. Plaintiff understands that he is irrevocably surrendering his parental rights to the child forever.
This decision is made by plaintiff deliberately, with clear knowledge of the probable consequences. This decision is not hurried, nor spur of the moment. This decision is a conscious one not made under duress or coercion. This decision is the result of consultations with the plaintiff's counsel including advice from both the partner and associate at the [.. .] firm retained by plaintiff to represent him. Numerous and lengthy telephone and office conferences between counsel and plaintiff were held to specifically discuss the termination of plaintiff's rights to the child, [R.].
Plaintiff is 45 years of age, has the educational background (D.M.D. from [...] University), experience and ability to make this full, free, and understanding decision to terminate his parental rights. Plaintiff's dental practice specializes in work with children, thereby providing a context within which plaintiff has made this decision. Plaintiff's decision to surrender all rights to the child, including but not limited to custody and any visitation, is a result of plaintiff's decision that it is in the child's best interest that he never see, contact, search for, or be involved in the child's life in any way.
Plaintiff shall not be obligated in any way to pay any child support on behalf of this child or to make any financial contributions on behalf of the child at any time including, but not limited to, education, medical, dental, health insurance or life insurance.
Defendant-counterclaimant shall have the right without notice to change the name of the child and change the birth certificate. Defendant-counterclaimant *484 shall have the sole, full and exclusive right to consent to any future adoption of the child. Plaintiff shall sign a surrender for adoption at the time of the signing of this Agreement. The intent of this provision concerns a future spouse of defendant-counterclaimant.
If defendant-counterclaimant becomes incapable of supporting the child financially, [J.K.], [...], a practicing psychologist and brother of the defendant-counterclaimant, shall accept full and complete financial responsibility for the child.
Neither defendant-counterclaimant nor anyone in her immediate family shall identify plaintiff to the child as her father nor discuss plaintiff with the child in any manner.
The court has been asked by both counsel to incorporate the Parties' Agreement within a Judgment of Divorce.
The question before the Court is whether a parent may voluntarily surrender his or her parental rights in a context other than the adoption of a child per N.J.S.A. 9:3-47 et seq.[1]
For the following reasons, a parent may not do so.
Parental rights are not a sometime thing. The termination of those rights entails a permanent sundering of parental ties.[2] This is substantially different from child custody, which is governed by a "best interests" standard and is impermanent, being subject to alteration as changed circumstances require. See In Re D., 61 N.J. 89, 93, 293 A.2d 171 (1972). A child's relationship with his or her parents is so significant that all doubts are to be resolved against the destruction of that relationship. In Re N., 96 N.J. Super. 415, 425, 233 A.2d 188 (App.Div. 1967). See Barron v. Barron, 184 N.J. Super. 297, 303, 445 A.2d 1182 (Ch.Div. 1982), holding that parental rights will be preserved unless enforcing them will adversely affect *485 the safety, happiness, physical, mental, and moral welfare of the child.
The termination of parental rights is governed strictly by statute. In The Matter of Baby M, 109 N.J. 396, 425-426, 537 A.2d 1227 (1988). There, the Supreme Court held that the termination of parental rights by consent of the parties is valid only when effected through voluntary surrender of a child to an approved agency or to the New Jersey Division of Youth and Family Services (DYFS) accompanied by a formal document acknowledging termination of parental rights, or through a private placement adoption. Id. at 426, 537 A.2d 1227. Here, neither an approved agency nor DYFS is implicated. The Court, therefore, must examine the standards for termination in the context of a private placement adoption to determine whether the parties' agreement is consonant with public policy.
In Baby M, supra, at 427, 537 A.2d 1227, the Supreme Court addressed those standards:
In order to terminate parental rights under the private placement adoption statute, there must be a finding of intentional abandonment or a very substantial neglect of parental duties without a reasonable expectation of a reversal of that conduct in the future. N.J.S.A. 9:3-48c(1).
The concept of "intentional abandonment" is addressed by In Re Adoption of a Child by J.R.D., 246 N.J. Super. 619, 588 A.2d 446 (Ch.Div. 1990). There, the Chancery Division held that, in the context of a contested adoption, the father's parental rights would be terminated only upon a showing of clear and convincing evidence that he intentionally abandoned his parental obligations. The natural father there had had virtually no involvement or contact with his seven-year-old daughter since her birth. Despite this unfortunate circumstance, and the Court's view that some might well argue that "the best interests of the child will be advanced by entering a judgment of adoption ...", Id. at 628, 588 A.2d 446, the Court ruled that plaintiff had failed to meet its burden. The Court found that the natural parent had not "forsaken parental obligations of care and support of the child." Ibid.
J.R.D, supra, clearly holds that the child's "best interests" are never sufficient to terminate parental rights, absent proofs *486 demonstrating, by clear and convincing evidence, the statutory criteria. This is, of course, qualitatively different from the standard for the review of custody agreements per N.J.S.A. 9:2-4(d):
The Court should order any custody arrangement which is agreed to by both parents unless it is contrary to the best interests of the child.
In In re Adoption by J.J.P., 175 N.J. Super. 420, 419 A.2d 1135 (1980), the Appellate Division held that, absent consent by both natural parents, the Court must find an intentional abandonment before it may terminate parental rights in an adoption context. Id. at 427, 419 A.2d 1135.
Baby M, supra, holds that the statutory requirements must be met in private placement adoptions; because consent is not a statutory criterion for the termination of parental rights, parental rights will not be terminated in a private placement without proof of the willful forsaking of parental rights. 109 N.J. at 427-428, 537 A.2d 1227, citing Sees v. Baber, 74 N.J. 201, 213, 377 A.2d 628 (1977).
In Sees v. Baber, an unmarried mother surrendered her child for adoption and subsequently reneged. The trial court expressly found that the mother had carefully considered her decision; her decision was voluntary without fraud, coercion, undue influence or pressure. The Supreme Court, while adopting those findings, disagreed with the trial court's analysis and stated, "in an unsupervised private placement, since there is no statutory obligation or consent, there can be no legal barrier to its retraction." Id. at 215, 377 A.2d 628.
The parties here argue that, under the adoption procedure presently in effect, a natural parent may consent to an adoption per N.J.S.A. 9:3-48; by analogy, therefore, both parties here having consented to the termination of plaintiff's parental rights, their Agreement should be incorporated within a divorce judgment. This analogy is not persuasive. First, the adoption statute provides for an approved agency investigation, a preliminary hearing (both of which are waivable at the court's *487 discretion) and a finding of fitness. Second, an adoptive parent is a parent. The adopted child will be raised (presumably) by two individuals with different (perhaps complementary) strengths and weaknesses. The parents here implicitly recognize the importance of this factor to a child by limiting the adoption of the child to the defendant's prospective remarriage.
It is less than clear that any abandonment occurred here. Plaintiff's complaint and supplemental certification reflect behavior on the part of the defendant smacking strongly of a pattern of conduct making it unreasonable for plaintiff to continue cohabitation. These allegations include interference by defendant and her family with plaintiff, intractability, claims by defendant that plaintiff committed improprieties with the child throughout the nine days of contact, and other similar circumstances. Plaintiff cannot be said to have intentionally abandoned the child; in any event, plaintiff's absence for two and one-half months is not sufficient to constitute abandonment as a matter of law. If the consent required to terminate must be "deliberate, long under consideration and with clear knowledge of the probable consequences ...", In Re Adoption of a Child by R.D., 127 N.J. Super. 311, 314, 317 A.2d 382 (App.Div. 1974), how can it be argued that nine days of contact and two months of deliberation (in the context of the pending dissolution of an extremely unhappy eight-month marriage) is sufficient?
Furthermore, the haste of the parties' marriage and plaintiff's refusal to act in accordance with a reality which he astutely recognized from the beginning suggests that, for all his professional and academic success, he may not be "mature, intelligent and experienced ... motivated by ... concern for the best interest of the child", which is the requisite standard for the grant of termination. See In Re: Adoption of One Child by R.A.C., 154 N.J. Super. 513, 517-518, 381 A.2d 1232 (App.Div. 1977)
The Court has every expectation that, upon reflection, plaintiff may consider his present inclination ill-advised in the future. *488 The child deserves a nurturing, loving father. The Court has seen nothing to believe that plaintiff cannot evolve into such a person. It will not cut R. off from her inheritance of contact with both father and mother simply because her parents do not get along. If that were the appropriate standard, most cases in the Family Part would be resolved by a parent's retraction of responsibility. It is not that simple.
The Property Settlement and Separation Agreement is clearly invalid. In Baby M. the Court stated:
[A] contractual agreement to abandon one's parental rights, or not to contest a termination action, will not be enforced in our courts. The Legislature would not have so carefully and so consistently and so substantially restricted the termination of parental rights if it had intended to allow termination to be achieved by one short sentence in a contract. 109 N.J. at 429, 537 A.2d 1227.
The Agreement is invalid as well because it contains no right to rescind and is irrevocable. Id. A contractual surrender of parental rights which is permanent is not provided for under New Jersey law. Id. at 433, 537 A.2d 1227. Agreements between parents are not dispositive of the issue. The determining factor is the present and future welfare of the children; the ultimate determination of custody is with this court in the exercise of its supervisory jurisdiction as parens patriae. Sheehan v. Sheehan, 38 N.J. Super. 120, 118 A.2d 89 (App.Div. 1955).
Because the surrender of parental rights is so inextricably interwoven into the quoted paragraph, the paragraph is unenforceable in its entirety. See Stack v. P. 6.Garage, Inc., 7 N.J. 118, 80 A.2d 545 (1951); Naseef v. Cord, Inc., 90 N.J. Super. 135, 216 A.2d 413 (App.Div. 1966).
NOTES
[1] There is no question of duress or coercion in this case; each party testified that the agreement was fair, reasonable, and the product of intensive discussion with his or her respective counsel and negotiation with adversary counsel.
[2] The termination of visitation alone is considered a "drastic step", Wilke v. Culp, 196 N.J. Super. 487, 483 A.2d 420 (App.Div. 1984).