20 A.3d 1171

E.E., PLAINTIFF, v. O.M.G.R., DEFENDANT.

Superior Court of New Jersey
Chancery Division Atlantic County

Decided June 10, 2011.

*Cindy J. Baen,* attorney for plaintiff.

*O.M.G.R.,* defendant pro-se.

SANDSON, J.S.C.

The question presented to the court is whether two parties can enter into a private contract regarding a self-administered "artificial insemination" procedure whereby one party may contract with another to terminate their parental rights. This is a case of first impression under New Jersey law. This court has determined, first, that parties cannot by contract terminate their parental rights under common law. Rather, the termination of parental rights is controlled by statute. Second, the Legislature did not intend for this type of procedure to lead to the termination of parental rights under the New Jersey Artificial Insemination statute *N.J.S.A.* 9:17–44, and therefore the parental rights of the donor in this matter will not be terminated.

The facts of this case are unusual. Plaintiff is a single woman without a partner who wished to have a child. She did not wish to assume the expense of purchasing sperm through a sperm bank or use a licensed physician in order to effect the insemination. Rather she secured her friend, O.M.G.R., to donate his sperm, which she transported to its intended location with a kitchen

turkey baster. Shortly following the child's conception, the parties entered into an agreement dated April 12, 2010, whereby defendant contracted to surrender and terminate all future rights and responsibilities to the child and plaintiff assumed all financial responsibility for the child. The Agreement contained the following provisions:

*Voluntary Relinquishment/Termination of Parental Rights*

This is a voluntary relinquishment of any and all parental rights and obligations such as child support, visitation and custody in relationship to the donation of the sperm either through in-vitro fertilization, artificial insemination/intrauterine insemination or sexual relations from [defendant] to [plaintiff].

If a child is conceived or born through the sperm donations given by [defendant] through in-vitro fertilization, artificial insemination/intrauterine insemination or sexual relations to [plaintiff] this document serves as a voluntary relinquishment of any and all parental rights and obligations such as child support, visitation & custody in relation to the born child or children in the event of multiple birth. This relinquishment & termination of all legal parental rights to the sperm, fetus, or born child is completely voluntary and without force, gift, monetary exchange or promises.

[Plaintiff] shall be the sole parent and provider for the child and relinquishes any rights to seek financial or emotional support from [defendant] at any time.

Both parties signed and dated the document in the presence of a notary on April 19, 2010.

On December 17, 2010, the child, G.J.E., was born. No name was listed on the birth certificate as the child's father. Following the child's birth, the parties again signed a consent order, indicating again that defendant had surrendered all rights and responsibilities relating to the child and plaintiff had assumed full responsibility for the child's health and well-being. The consent order was submitted to this court.

Under New Jersey law, a child has the right to the security of two parents at the time of birth. *C.M. v. C.C.*, 152 *N.J.Super.* 160, 167, 377 *A.*2d 821 (Ch.Div.1977). The Supreme Court of New Jersey noted that parental rights can be legally terminated under New Jersey law only when a parent has been declared unfit, an adoption has taken place, or if [the Division of Youth and Family Services] has removed a child from a parent. *Monmouth County Div. of Soc. Serv. for D.M. v. G.D.M.*, 308

*N.J.Super.* 83, 90, 705 *A.*2d 408 (Ch.Div.1997) (citing *In re Baby M,* 109 *N.J.* 396, 426, 537 *A.*2d 1227 (1988)). Accordingly, the parental rights of one parent may not be terminated by consent except when it is accompanied by the adoption of the child by another party. *See, e.g., R.H. v. M.K.,* 254 *N.J.Super.* 480, 484, 603 *A.*2d 995 (Ch.Div.1991). A detailed consent agreement designed to terminate a biological father's parental rights and spell out the mother's ability to fully care for the child was definitively struck down by the court in *R.H., supra,* 254 *N.J.Super.* at 484, 603 *A.*2d 995. The parties in *R.H.,* with the help of counsel, entered into a comprehensive agreement, whereby the biological father fully and unequivocally gave up his rights to the child that the parties had conceived. *Id.* at 483, 603 *A.*2d 995. The parties argued, under the adoption procedure then in effect, that a natural parent may consent to an adoption of a child conceived per *N.J.S.A.* 9:3–48.[1]

By analogy, the parties argued, since they both consented to the termination of plaintiff's parental rights, their agreement should be upheld by the court. *Id.* at 486, 603 *A.*2d 995. The court did not find the analogy persuasive and held the agreement invalid. The court reasoned, first, the adoption statute provides for an approved agency investigation, a preliminary hearing and a finding of fitness. *Ibid.* Secondly, the court reasoned that an adoptive parent is a second parent to the child noting "[t]he adopted child will be raised (presumably) by two individuals with different (perhaps complementary) strengths and weaknesses." *Id.* at 487, 603 *A.*2d 995.

The guiding principle necessary to resolve the case at hand is that a permanent contractual surrender of parental rights is not provided for under New Jersey law. *In re Baby M, supra,* 109 *N.J.* at 433, 537 *A.*2d 1227. The Court has unequivocally stated that a child's relationship with his or her parents is so significant that all doubts are to be resolved against the destruction of that

---

[1] The court notes that the adoption statute herein referenced is still in effect.

relationship. *Ibid.; see also In Re N.M.*, 96 *N.J.Super.* 415, 425, 233 *A.*2d 188 (App.Div.1967). Rather, the case law demonstrates that the termination of parental rights is strictly governed by statute. *In re Baby M, supra*, 109 *N.J.* at 425–26, 537 *A.*2d 1227. In this case, there is no second party to adopt the child. Therefore, the termination of defendant's rights cannot be accomplished by the parties' contract.

■ The parental rights of the biological father are presumptively established by the father's genetic relationship to the child under *N.J.S.A.* 9:17–41(b).[2] However, the New Jersey Legislature has recognized that biology is not always controlling in the area of parentage and has created statutory exceptions to the presumption that the biological father has parental rights in the area of artificial insemination. The issue presented by this case is whether a party may avail themselves of the protection set forth by *N.J.S.A.* 9:17–44(b) when they have not strictly complied with a provision within the statute.

---

[2] *N.J.S.A.* 9:17–41(b) reads as follows:

[The parent and child relationship between a child and] [t]he natural father, may be established by proof that his paternity has been adjudicated under prior law; under the laws governing probate; by giving full faith and credit to a determination of paternity made by any other state or jurisdiction, whether established through voluntary acknowledgment or through judicial or administrative processes; by a Certificate of Parentage ... that is executed by the father, including an unemancipated minor, prior to or after the birth of a child, and filed with the appropriate State agency; by a default judgment or order of the court; or by an order of the court based on a blood test or genetic test that meets or exceeds the specific threshold probability ... creating a rebuttable presumption of paternity.

The statute seems to indicate that a biological relationship, although not necessary, leads to the presumption of paternity. An interesting question raised by this case is whether the biological father's rights existed prior to the filing of this action. Implicit in the motion to terminate parental rights is an acknowledgement of the paternity of the child as the biological issue of plaintiff and defendant. This recognition triggers the existence of parental rights. As noted previously, defendant does not appear on the birth certificate, he did not sign a Certificate of Parentage, and he does not have a legal relationship with plaintiff that would lead to the presumption of parenthood.

The statute deals directly with artificial insemination and states in pertinent part that

> Unless the donor of semen and the woman have entered into a written contract to the contrary, the donor of semen provided to a licensed physician for use in artificial insemination of a woman other than the donor's wife is treated in law as if he were not the father of a child thereby conceived and shall have no rights or duties stemming from the conception of a child.

[*N.J.S.A.* 9:17–44(b).]

In this case, there was no physician involved in the insemination process. Rather, plaintiff procured sperm from defendant and inseminated herself.

There has been no case in New Jersey that carries a similar factual scenario to this case since the enactment of the statute.[3] However, since the statute itself is a variation of the Uniform Parentage Act ("UPA"), similar provisions have been enacted in other areas of the country. It is therefore appropriate to turn to our sister states for guidance on this issue. In a California case, *Jhordan C. v. Mary K., Victoria T.,* 179 *Cal.App.*3d 386, 224 *Cal.Rptr.* 530, 531–32 (1986), a known sperm donor petitioned for parental rights relating to a child that had been conceived at home with sperm he provided. The court held that the issue was controlled by the artificial insemination statute in California, which stated in pertinent part that "a 'donor of semen provided to a licensed physician for use in artificial insemination of a woman other than the donor's wife is treated in law as if he were not the natural father of a child thereby conceived.'" (quoting Cal. Civ. Code, § 7005(b)). The court concluded that where impregnation takes place by artificial insemination, and the parties have failed to take advantage of this statutory basis for preclusion of paternity

---

[3] The statute was enacted in 1983. Prior to the enactment of the statute and frequently cited in later cases is a prominent New Jersey case whereby a mother procured sperm from a known donor and used it to inseminate herself at home. The court held that the donor, who had a relationship with the mother (although not sexual in nature), was the father of the child. He was able to have the same parenting rights as a father who conceived a child in a traditional manner. *C.M. v. C.C., supra,* 152 *N.J.Super.* at 161–67, 377 A.2d 821.

(i.e. the use of a licensed physician in the process), the donor of semen can be determined to be the father of the child in a paternity action. *Id.* at 531.

The defendants in *Jhordan* argued that the element of physician involvement appeared in the statute because the Legislature incorrectly assumed that all artificial inseminations would occur under the supervision of a physician. Alternately, they argued the requirement of physician involvement was directive rather than mandatory. The court was not persuaded. It noted that the history of the UPA (the source of *Cal. Civ.Code* § 7005 and also *N.J.S.A.* 9:17–44) indicates conscious adoption of the physician requirement. The California court pointed out that the initial "Discussion Draft" submitted to the drafters of the UPA in 1971 did not mention the involvement of a physician in artificial insemination.[4] The eventual inclusion of the physician requirement in the final version of the UPA suggested to the court that drafters made a conscious decision to require physician involvement. *Id.* at 534. The court believed there were significant, logical reasons for the statutory requirement of a physician. These included health considerations, including medical histories relating to both parties, which might impact the resulting child. In addition, the court believed the presence of a professional third party created a formal, documented structure for the donor-recipient relationship. *Id.* at 535. Although the court acknowledged that artificial insemination could easily be carried out without a physician's involvement, and even that there are some privacy considerations against requiring a physician, the court concluded that Mary K. could have

---

[4] According to the court in *Jhordan,* the original draft included no requirement as to how semen was to be obtained or how the insemination procedure was to be performed. The pertinent portions of the discussion draft provided: "(a) If the husband has consented to artificial insemination of his wife, a resulting child is the legitimate child of the husband and wife .... [para.] (b). The donor of semen used in artificial insemination has no legally recognized relationship with a resulting child. An existing relationship is not affected." *Jhordan, supra,* 224 *Cal.Rptr.* at 534.

taken advantage of the statute through the minimal use of a licensed physician, either to procure the sperm or to effectuate the insemination.[5]

Similarly, the Kansas Supreme Court most recently held in the case *In re the Paternity of K.C.H. and K.M.H.*, 285 *Kan.* 53, 169 *P.*3d 1025, 1042 (2007) that the physician did not need to be directly involved in the procurement of the sperm as long as he was involved in the insemination. Rather, the court analyzed the language of the statute and did not discuss the Kansas Legislature's process in crafting the statute at issue.[6] The fact that the mother supplied the donor's sperm to the physician did not prevent application of the statute because the court held that the use of a physician was sufficient to trigger the statute. Rather, the court applied the statute as written and refused to read in additional requirements than the ones laid out.

---

[5] The court in *Jhordan* wrote,

> We wish to stress that our opinion in this case is not intended to express any judicial preference toward traditional notions of family structure or toward providing a father where a single woman has chosen to bear a child. Public policy in these areas is best determined by the legislative branch of government, not the judicial. Our Legislature has already spoken and has afforded to unmarried women a statutory right to bear children by artificial insemination (as well as a right of men to donate semen) without fear of a paternity claim, through provision of the semen to a licensed physician. *Jhordan, supra*, 224 *Cal.Rptr.* at 537.

This court agrees.

[6] *Kan. Stat. Ann.* § 38–1114(f) (1994) states in pertinent part: "The donor of semen provided to a licensed physician for use in artificial insemination of a woman other than the donor's wife is treated in law as if he were not the birth father of a child." The Court explained that:

> The words "the donor" form the subject of the predicate "is treated as if he were not the birth father." The lengthy dependent clause "provided to a licensed physician for use in artificial insemination of a woman other than the donor's wife" modifies "semen." *K.S.A.* 38–1114(f) does not require the donor himself to provide his sperm to the physician performing the insemination. It requires only that the donor's sperm be provided to the physician by an unspecified someone or something. *In re the Paternity of K.C.H. and K.M.H., supra*, 169 *P.*3d at 1042.

■ Our Supreme Court has consistently held that the best indicators of legislative intent are the plain words of the statute. *Hardy ex rel. Dowdell v. Abdul–Matin*, 198 *N.J.* 95, 101, 965 *A.*2d 1165 (2007) (citing *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005)). In reviewing the statutory language, courts should "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." *DiProspero, supra*, 183 *N.J.* at 492, 874 *A.*2d 1039. The Court has cautioned against "'rewrit[ing] a plainly-written enactment of the Legislature or presum[ing] that the Legislature intended something other than that expressed by way of the plain language.'" *Ibid.* (quoting *O'Connell v. State*, 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002)). This court is not interested in debating the merits of the purpose behind the "licensed physician" provision within our statute. The court notes that the New Jersey Legislature, in enacting the UPA, could have removed the requirement of a licensed physician, as other states have done.[7]

Although this court can see by the parties' original agreement [8] that the intent was to have defendant's role limited to supplying

---

[7] See *McIntyre v. Crouch*, 98 *Or.App.* 462, 780 *P.*2d 239 (1989), *cert. denied* 495 *U.S.* 905, 110 *S.Ct.* 1924, 109 *L.Ed.*2d 288 (1990). In this case, an unmarried woman artificially inseminated herself with a known donor's semen. The donor sought recognition of his paternity, and both he and the woman sought summary judgment. The Oregon artificial insemination statute read:

> If the donor of semen used in artificial insemination is not the mother's husband: (1) Such donor shall have no right, obligation or interest with respect to a child born as a result of the artificial insemination; and (2) A child born as a result of the artificial insemination shall have no right, obligation or interest with respect to the donor. *Ore.Rev.Stat.* § 109.239 (1977).

On appeal, the court held that summary judgment was inappropriate because the court still had to consider whether the parties had verbally agreed to allow the donor to have a relationship with the child. *McIntyre, supra*, 780 *P.*2d at 246. This court notes that the artificial insemination contemplated in the Oregon statute does not mention the presence of a physician.

[8] The court notes that in plaintiff's original certification, she states she had undergone artificial insemination and that defendant was a sperm donor. How-

biological material and for defendant to be absolved from further liability, the parties failed to abide by the statute in failing to use a physician. In no case did the self-designation of a party as a "sperm donor" excuse this statutory deviation. Accordingly, this court is bound to follow the language of the statute and may not ignore a portion of the statute because of the parties' intent.

The court notes that the case law favors the application of the statute to limit the rights of the donor when the donor seeks to exercise his parental rights by virtue of his biological relationship. The existence of parental rights and the exercise of those rights are different. Defendant, who was present for this hearing via phone but chose not to participate, has made the choice not to exercise his parental rights and, should that continue by agreement between the parties, the court sees no reason to impose a different result. In accordance with the testimony presented by plaintiff, this court grants sole custody of G.J.E. to plaintiff. Defendant has been granted no parenting time with G.J.E. Plaintiff has made the choice not to seek child support. The court believes this order is currently in the best interest of G.J.E. because plaintiff has testified to her ability to fully provide for the child both financially and emotionally, and defendant has expressed, through the consent order, his desire not to have any relationship with the child. The court expresses no opinion as to the appropriateness of the termination of defendant's parental rights at a later date. However, this court feels under the case law and the instant statute, defendant's rights cannot be terminated in the manner proposed and are not encompassed under the artificial insemination statute.

---

ever, the contract signed by both parties prior to the birth of the child indicates that the donation of sperm may be through "In-vitro fertilization, artificial insemination/intrauterine insemination or sexual relations." Accordingly, the parties seemed to have depended on the categorization of defendant as a donor to be dispositive.

Accordingly, plaintiff's motion to terminate defendant father's parental relationship is denied. Plaintiff's motion for sole custody and no parenting time for defendant is granted.